ROSS-FRANKEL, INC., v. STATE.

(*Knoxville*, September Term, 1942.)

Opinion filed November 7, 1942.

W. P: O'Neil and Howard Jarvis, both of Knoxville, for plaintiff in error.

Ernest F. Smith, Assistant Attorney-General, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

This appeal is from a conviction under an indictment charging the violation of Chapter 70, Pub. Acts of 1931, as amended (Williams' Code, section 7182.35), by engaging in general contracting in this State without having first been licensed as required by the Act.

This Act provides that a license shall be obtained from the State Board of Licensing General Contractors before any general contractor undertakes, for a fixed price, "to contract, erect, alter or repair, . . . under his, their or its supervision, buildings, structures and private works and utilities of every nature or character whatsoever, including railroads, municipal works, water supply systems, sewerage and drainage systems, levees, locks and dams, canals, industrial works, and any highways, roads, bridges or similar structures or projects where the cost

of the completed structure or improvement exceeds Ten Thousand ($10,000.00) Dollars; . . ." Section 11, as amended by Pub., Acts 1937, c. 156, sec. 4.

The statute was enacted under the police power of the State. In section one it is declared that, "In order to safeguard life, health, and property, and to promote public welfare by requiring that only properly qualified persons shall engage in general contracting," and shall be required to submit evidence that he is qualified to engage in general contracting, and "shall be licensed as hereinafter provided."

Defendant is a New York corporation and is engaged in the business of fabricating complete store furnishings and equipment at its factory in New York and shipping the fabricated articles to the purchaser ready for installation. It is also engaged in the business of manufacturing and installing store fronts.

The record discloses that defendant prepared for the Key Associates, Inc., the lessee of a building in Knoxville, Tennessee, plans and specifications for (1) a store front and (2) fixtures and equipment for the store interior. That Key Associates, Inc., solicited bids for the work and furnishings as called for by the two sets of plans and specifications. Kirkpatrick & Johnson, a Knoxville concern, also submitted a bid. The contracts were let to defendant. The contract price for the store front and the installation of a vault was $7,750. The contract price for the furnishing and installation of the interior equipment, consisting of showcases, wall cases and paneling, shelving, etc., was $9,000.

The trial judge, sitting without a jury, found, among other things, that:

"This work consisted of remodeling the front of the building according to their plan, and the placement of

certain interior shelving, show cases and lighting, *the interior part of the work not being attached or fastened to the freehold, but being set so as to more or less support itself.''* (Italics ours.)

The finding of the trial judge that the interior work was not attached to the freehold is supported by the testimony of all of the witnesses for defendant and by the plans and specifications. The evidence shows that the interior fixtures and equipment were fabricated in New York and put together in the store at Knoxville without being fastened to the walls or other parts of the building, and could be easily and quickly removed without in any way affecting the building structure. The linoleum floor covering, however, was pasted to the floor.

It is the theory of the State that taking the two contracts together, the cost price of the whole work exceeded $10,000. On the other hand, the theory of defendant is that the contract cost for the furnishing and installation of the interior fixtures and equipment, unattachable to the freehold and easily removable, cannot properly be added to the cost of erecting the store front and vault, under the first contract, so as to show a total cost in excess of $10,000.

██ In our opinion, the Legislature never intended this statute to apply to the furnishing and installation of unattachable and removable store fixtures. The Act is valid as a police measure in the regulation of general contractors engaged in the erection of buildings, structures and other projects of that kind and nature set forth in the Act. It would do violence to the Act to construe it as embracing the furnishing and installation of unattached and removable fixtures in a store, or other building.

The placement of desks, counters, shelves and such loose and unattached equipment and fixtures in a store is not within the language or spirit of the Act in question. These things in no way affect "life, health and property" and do not affect the public welfare. Hence, they are not within the purview of the Act.

We find no basis for the view that there was a purposeful evasion of the Act; that the contract was separated or split in order to bring the amount below the $10,000 limitation. The trial Court does not so find or suggest and the proof is undisputed that defendants did not know of the Act when the work was let, and that when informed of it did not construe or understand it as embracing this work. So that, if there is a violation at all, it is purely technical and not intentional. A sufficient reason for the making of two contracts is that they covered different subjects.

The opinion of the trial Judge in the record is devoted chiefly to a discussion of the constitutionality of the Act, and, construing it as we do, we agree with his conclusion as to this. Indeed, we do not understand that to be questioned, except and unless it should be held that the Act applies to contracts, for installation of removable fixtures merely. We do not understand the trial Judge to so hold. His holding is merely that the contracts could not be segregated, but that the aggregate of the work and cost must be viewed as a whole and that, so considered, the total price of $16,200 was in excess of $10,000, and that liability followed. It is with this holding, as above indicated, that we are constrained to differ.

For the reasons indicated, the judgment will be reversed.

### DISSENTING OPINION.

MR. JUSTICE PREWITT delivered a dissenting opinion.

The two contracts mentioned in the majority opinion were entered into on the same date and between the same parties. One contract provided that the contract price for the store front and the installation of the vault was $7,750. The contract price for the furnishing and installation of the interior equipment, consisting of showcases, wall cases and paneling, shelving, etc., was $9,000, aggregating approximately $16,750. The improvement had in mind the operation of a modernly equipped jewelry store, and the store front was to be altered and a permanent vault installed.

It is my opinion that the transaction should be looked to as a whole, because the parties had one purpose in view, and that was altering, modernizing and equipping the store for the jewelry business.

The learned circuit judge found the above to be true, and, in my opinion, his judgment was correct in finding that the defendant was guilty of violating the statute.

It results that I respectfully dissent from the majority opinion.