[Civ. No. 2581.    Second Appellate District.—September 30, 1918.]

## CHARLES C. MICKEL, Respondent, v. J. B. ALTHOUSE et al., Appellants.

NEGLIGENCE—MASTER AND SERVANT—PERSONAL INJURIES—ACT OF 1911 —PLEADING—COMPLAINT.—In an action for personal injuries sustained by an employee, while the act of 1911 (Stats. 1911, p. 796) was in force, a complaint alleging want of ordinary care on the part of the employer was sufficient without alleging gross negligence or willful personal misconduct of the defendants, where the complaint did not state that the defendants or either of them had ever filed with the industrial accident board a written statement that they accepted the provisions of said act of 1911.

ID.—FALL OF SCAFFOLD—NEGLIGENCE OF BUILDER—EVIDENCE.—In this action, in which the injuries complained of by plaintiff were sustained through the fall of a scaffold upon which he was working as a carpenter in the construction of a house, and in which action the owner of the house and the builders who had contracted to do all the

carpenter work were joined as defendants, the evidence justified the jury in finding that the plaintiff's injuries were caused by the negligence of the owner's codefendants who, in the construction of the scaffold, were represented by their employee who built it and did not securely fasten it.

ID.—FELLOW-SERVANT.—Under the act of 1911 which was in force at the time the plaintiff sustained the injury involved in this action, the fact that the person who built the scaffold was a fellow-servant of the plaintiff was not a defense to the plaintiff's action against the defendants.

ID.—OWNER AND INDEPENDENT CONTRACTORS.—There having been a written agreement between the owner and his codefendants in this action, by which the latter had agreed to furnish all carpenter labor for the work on a house and garage for a stated sum of money, testimony that the owner had the right to say how the work should be done, and apportioned his installments of payments according to the men his codefendants had on the work, was not sufficient as against the terms of the written contract to prove or tend to prove that the plaintiff, a carpenter employed on the building, was an employee of the owner.

ID.—TWO CONTRACTING PARTIES—LIABILITY FOR SERVANT'S NEGLIGENCE.—When the right to select the servant and to control his work rests in one of two contracting parties to an independent contract, the party excluded from such selection and control is freed from liability for the negligence of the servant.

ID.—RELATION OF CONTRACTOR UNCHANGED BY CERTAIN RIGHTS OF EMPLOYER.—The fact that an employer has the right to make alterations in, deviations from, additions to and omissions from contract work does not change the relation of one contracting to do the work from that of an independent contractor to that of a mere servant.

ID.—MASTER AND SERVANT—CONTRACTORS NOT SERVANTS.—Tested by the definition of a servant, found in section 2009 of the Civil Code, the contractors, sued in this action as codefendants of the owner, were not servants of the owner, and he could not be termed their master, as they were doing their work in pursuit of an independent calling.

ID.—OWNER NOT LIABLE FOR CONTRACTOR'S NEGLIGENCE.—Under the evidence and the law in this case the owner was not the employer of the plaintiff, and the negligence of the contractors was not negligence for which the owner was liable.

CONTRACTS — INTERPRETATION — QUESTION OF LAW FOR THE COURT.—Where the terms of a contract are clear and certain, its meaning and effect and the relation of the parties to it thereby created become a question of law to be decided by the court.

ID.—EVIDENCE—AGE OF WRITINGS—EXPERT TESTIMONY.—Even if it be assumed, as determined by some authorities that the comparative

ages of documents and writings is a proper subject of expert testimony, yet there should be as a ground for the admission of such testimony some reasonably extensive length of time involved in the inquiry, or there should be some controversy over the genuineness of the signatures or the order in which they were made, or concerning interlineations or other irregularities discernible in the document.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Paul J. McCormick, Judge.

The facts are stated in the opinion of the court.

Frank Bryant, for Appellants.

Frank A. McDonald, for Respondent.

CONREY, P. J.—The plaintiff obtained judgment against the defendants on account of personal injuries alleged to have resulted from negligence of the defendants. The defendants appeal from the judgment, and from an order denying their motion for a new trial.

On the twentieth day of February, 1913, the plaintiff was working as carpenter on a house then being constructed for the defendant J. B. Althouse on land owned by Althouse in the city of Los Angeles. In his complaint the plaintiff alleged that he was working under the direction of the defendants Borden, who had supervision over the plaintiff and the right to direct and control his services, and that those defendants were at that time acting for and on behalf of the owner of the property. In their answer the defendants alleged that the defendants Borden were not acting as superintendents for the owner, but that, on the contrary, they were acting as contractors and not otherwise, and that any work done or services performed by defendants Borden was done and performed under contract with the owner, and that the owner did not have the right to direct and control the services of the plaintiff. The defendants denied the allegations charging them with negligence, and alleged facts showing that the accident was due solely to the negligence of the plaintiff, such conduct being without the direction, knowledge, or consent of the defendants.

At the time when this accident occurred there was in force an act approved April 8, 1911, entitled: "An act relating to

the liability of employers for injuries or death sustained by their employees, providing for compensation for the accidental injury of employees, establishing an industrial accident board, making an appropriation therefor, defining its powers and providing for a review of its awards.'' According to the provisions of that act the industrial accident board was not authorized to provide compensation for accidental injury to employees of private persons if, at or prior to the time of the accident to the employee, the employer had not, in the manner provided in the act, elected to become subject to the provisions thereof. In the absence of such election, any employee injured by reason of negligence of the employer was entitled to maintain an action at law for damages; but it was provided that in such cases the liability of the employer would be subject to the provisions of sections 1 and 2 of said act. Section 1 of that act reads as follows: ''In any action to recover damages for a personal injury sustained within this state by an employee while engaged in the line of his duty or the course of his employment as such, or for death resulting from personal injury so sustained, in which recovery is sought upon the ground of want of ordinary or reasonable care of the employer, or of any officer, agent or servant of the employer, the fact that such employee may have been guilty of contributory negligence shall not bar a recovery therein where his contributory negligence was slight and that of the employer was gross, in comparison, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee, and it shall be conclusively presumed that such employee was not guilty of contributory negligence in any case where the violation of any statute enacted for the safety of employees contributed to such employee's injury; and it shall not be a defense: (1) That the employee either expressly or impliedly assumed the risk of the hazard complained of. (2) That the injury or death was caused in whole or in part by the want of ordinary or reasonable care of a fellow-servant.'' (Stats. 1911, p. 796.)

Appellants demurred to the amended complaint upon the ground that it did not state facts sufficient to constitute a cause of action. They claim that the court erred in overruling that demurrer. Their contention is that the complaint was insufficient because it did not allege facts showing gross negligence or willful personal misconduct of the defendants.

But we think that the demurrer was properly overruled. The complaint did not allege that the defendants, or either of them, had ever filed with the industrial accident board a written statement to the effect that they accepted the provisions of the act. If such election had been made, the fact would be within the knowledge of the defendants, and we think that the burden was upon them to plead such fact in bar of the action, if the fact existed. The plaintiff was entitled to assume that his ordinary right of action continued to exist. Upon that assumption, the statement of facts showing want of ordinary care on the part of the employer was sufficient to enable the plaintiff to state a cause of action.

Appellants contend that there is no evidence of negligence on the part of them, or of either of them. Appellant J. B. Althouse further contends that there is no evidence tending to prove that the plaintiff was acting as his employee at the time of the accident. The record leaves no doubt that the house on which the accident occurred was the property of the defendant Althouse; and that at the time when he received the injuries the plaintiff was engaged at work as a carpenter in putting on the outside finish of that house. The plaintiff was working in company with another carpenter named Chapman. In order to do their work it was necessary for them to stand on a scaffold. That scaffold was constructed by them out of materials which were on the ground for that purpose. The staging of the scaffold gave way and let the plaintiff fall to the ground whereby he was seriously injured.

It further appears from the testimony introduced on behalf of the plaintiff, that the staging rested upon a crosspiece called a ledger. This ledger was, at one end, nailed to a part of the scaffold four feet away from the house, and at the other end was nailed to a piece called a scab, which in turn was nailed to the side of the house. Instead of notching the scab and resting the ledger on the notch, as it should have been in order to be safe, the ledger was nailed directly to the face of the scab. The scaffolding gave way at the end of the ledger that was fastened to the scab, because the scab was not notched. The scab slipped off from the house. There were several two by four studding in the house near that point. The scab was nailed into the siding, and not into the studding. If the scab had been nailed to the studding and the scab notched, and the ledger properly placed on the scab and

nailed to it, the accident would not have happened. Chapman built the scaffold and the plaintiff handed the stuff up to him. Chapman nailed the scab to the house. The plaintiff did not know of the unsafe condition of the scaffold before he went upon it. There were plenty of materials upon the ground, and the men had the privilege of using all that was necessary in the building of the scaffold. When they first started to put up the scaffolding plaintiff had started to notch the scab, and Borden said that it was not worth while to do so. For that reason the scab was not notched.

From the evidence thus produced the jury was justified in finding that the plaintiff's injuries were caused by negligence of the defendants Borden, represented by their employee, Chapman, and that the plaintiff was not negligent in failing to see and know that Chapman had not securely fastened the scaffolding to the house. Under the provisions above quoted from the statute which was in force at that time, the fact that Chapman was a fellow-servant of the plaintiff is not a defense to the action.

It does not necessarily follow, however, that any liability has been established against the defendant Althouse. The plaintiff testified that he was working for Althouse; but the specific facts shown do not support that conclusion. The house was being constructed for Althouse and was his property. But there is no evidence that the plaintiff was hired by Althouse, or that Althouse ever at any time or in any way recognized the plaintiff as his employee. The defendants introduced in evidence a contract in writing in the following terms:

"Los Angeles, Cal., Ja. 25, 1913.

"We, the undersigned, agree to furnish all carpenter labor for roughing in and finishing house and garage No. 514 So. Manhattan Pl., for the sum of eleven hundred and twenty-five dollars ($1,125.00).

"BORDEN BROS.
"G. H. BORDEN.

"Accepted January 25, 1913.
"JOHN B. ALTHOUSE."

G. H. Borden testified that he signed that contract and that it was the contract under which he performed all the carpenter work in the construction of the house; that he wrote the contract on the day of its date and that it was accepted by Althouse on the same day; that G. H. Borden had general

supervision over the carpenters and built according to the
plans; that he made no changes from the plans unless he had
orders from the owner; that Althouse furnished the plans
and the materials and had the right to say how the work
should be done; that Althouse paid him in weekly payments
according to the number of men that Borden had on the work:
"Mr. Althouse gave me the money and I used it in paying
off the men." The facts that, according to the testimony of
Borden, the owner had the right to say how the work should
be done, and apportioned his installments of payments ac-
cording to the number of men that Borden had on the work,
are not sufficient, as against the terms of the written contract,
to prove, and do not tend to prove, that the plaintiff was an
employee of the owner.   Borden Bros. were under contract to
furnish the carpenter labor and they had the uncontrolled
right to employ the carpenters and to retain or discharge them
at will.   When the right to select the servant and to control
his work rests in one of two contracting parties to an inde-
pendent contract, the party excluded from such selection and
control is freed from liability for the negligence of the ser-
vant. (*Callan* v. *Bull*, 113 Cal. 593, 598, [45 Pac. 1017].) And
the fact that the employer has the right to make alterations,
deviations, additions to, and omissions from the contracted
work does not change the relation of the party contracting to
do the work from that of an independent contractor to that of
a mere servant. (*Green* v. *Soule*, 145 Cal. 96, 99, [78 Pac.
337].)   Where the terms of a contract are clear and certain,
its meaning and effect and the relation of the parties to it
thereby created become a question of law to be decided by the
court. (*Green* v. *Soule, supra.*) "A servant is one who is
employed to render personal service to his employer, other-
wise than in the pursuit of an independent calling, and who in
such service remains entirely under the control and direction
of the latter, who is called his master." (Civ. Code, sec.
2009.)   Tested by this section, Borden Bros. were not servants
of Althouse and Althouse could not be termed their master, as
they were doing their work in pursuit of an independent
calling.

The only evidence offered by the plaintiff for the purpose
of contradicting the fact of existence of the written contract
above set forth, consisted of the testimony of an expert on
handwriting, who, after examining the written contract, an-

swered negatively the question whether in his opinion the signatures thereto "were made on the same day." The defendants' objection to this question should have been sustained. Assuming the law to be that, as some authorities have determined, the comparative ages of documents and of writings is a proper subject of expert testimony, yet as a ground for the admission of such testimony there should be some reasonably extensive length of time involved in the inquiry, or there should be some controversy over the genuineness of the signatures or the order in which they were made, or concerning interlineations or other irregularities discernible in the document. But none of these conditions exist here. It is not easily conceivable that, under the circumstances here shown to have existed, any substantial weight should be allowed to the bald statement that the signatures were made "not on the same day." Consistently with the answer, they might have been made on the very next day. In its trifling nature the question is analogous to one wherein a party sought to show by expert testimony that a cross placed in attestation of the signature of a person who could not write, was made by somebody else, or that somebody else held the pen. To which the judge replied: "I draw the line there; I can't stand for it." (*Wolf* v. *Gall*, 176 Cal. 787, [169 Pac. 1017].) As we view this case, it therefore is established that defendant Althouse was not the employer of the plaintiff and that the negligence of Borden Bros. is not negligence for which he is responsible.

The judgment and order against appellant J. B. Althouse are reversed. The judgment and order against the defendants W. Howard Borden and Al. Borden are affirmed.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 29, 1918.