[Civ. No. 18002. Second Dist., Div. Three. June 18, 1951.]

GIOVANNI MAROGNA, Appellant, v. BUFORD MITCHELL et al., Respondents.

Slane, Mantalica & Davis, Albert J. Corske and Raymond R. Roberts for Appellant.

Mohr & Borstein for Respondents.

BARTLETT, J., pro tem.—By his second amended complaint, in his first cause of action, appellant alleged that he entered into a contract by the terms of which respondents were to move appellant's house to another designated posi-

tion; that respondents agreed to perform all of their work in a good and workmanlike manner; that appellant performed all of the obligations he agreed to perform on his part but that respondents breached the contract in that the house was moved in such an unworkmanlike manner as to cause damage in the amount prayed for. The second cause of action alleged the ownership of the building by appellant, the fact that respondents moved it and then alleged that respondents so negligently handled the building in moving that appellant was damaged in the same amount set forth in the first cause of action. The answer denied the material allegations of the complaint, affirmatively alleged that the damage was caused by the acts and omissions of the appellant in that appellant failed and neglected to complete the foundation as required by the contract. Respondents also set up two matters of counterclaim, the first being for $150 alleged to be the agreed price for certain extra work appellant asked to be done and the second for $300 under a clause in the contract which provided that the owner would complete the foundation so that timbers placed there by the mover could be released within 45 days and thereafter a rental of $2.00 per day would be charged. The court found that the respondents had complied with the terms of the contract and that the failure of the appellant to perform his obligations under the contract was the proximate cause of his damage. The court decided in respondents' favor on the two items of counterclaim and rendered judgment in their favor for $450.

Appellant's first contention is that ''The trial court erred in failing to find the defendants were required to chip and drypack under the terms of the contract.'' The pertinent provisions of the contract were that respondents should move appellant's house, furnish all labor, materials and equipment so to do, do the work in a good, workmanlike manner and ''. . . in accordance with the best practice of house moving in that vicinity.'' The contract further provided that appellant should designate the exact location where the building was to be placed and that after appellant had placed the necessary foundation and underpinning, the respondents would lower the building and remove their equipment. Appellant agreed to complete the foundation within 45 days after the house was moved in order that the timbers might be released within that time.

After finding that appellant "spotted" the house at the location desired the court found, in part, as follows: " 'That subsequent to the moving and spotting of the said house, as aforesaid, it was necessary, in order for the said house to be lowered onto the foundation, that each and all of the following be done: (1) that a foundation be prepared and installed, (2) that the undersurface of the said house be smoothed off, and (3) that dry-packing be installed in order to bind the house to the foundation. That the foregoing, to wit, the acts designated as (1), (2) and (3) were *not duties or responsibilities of the defendants, but were solely the duties and responsibilities of the plaintiff.' "* This is the portion of the findings that is under attack. At the trial, appellant called one of the respondents, Buford Mitchell, under the provisions of section 2055 of the Code of Civil Procedure. In response to questions asked him by appellant, he testified that the building to be moved was a hollow tile building and that it was not until about a month after the building arrived that appellant provided any foundation; that then the building could not be lowered because appellant had failed to chip off the mortar, cement, lime and plaster clinging to the bottom of the house or, to use the language of the court in its findings, to smooth off the undersurface of the house and also because no drypacking had been done. He said: " 'Because of the rigidity of a hollow tile constructed dwelling the building cannot be lowered because *the foundation is not complete until two additional steps have been taken. . . .' "* The two steps that the witness referred to were smoothing off the undersurface of the house and drypacking it. The witness defined drypacking as a soft cement-sand combination placed on top and said it *". . . is an integral part of the new, smooth concrete foundation. . . ."* He also stated that both of these two steps were an integral part of the foundation work. Edwin O. Egnew called by the defendant as an expert witness testified: " 'That in the house moving industry, chipping and drypacking is never done by the house mover; that such is a construction job, to wit, *part of the foundation work,* and is not any part or parcel of a house mover's job or duty. It is the job of the foundation man to clean the bottom of the building and then, after the house is lowered to within one inch of the foundation, to dry pack it. The housemover cannot lower a house onto a new foundation until the foundation is properly prepared. Drypacking is the only possible method.' "

Appellant, after telling us what is necessary in the way of foundation for a frame or stucco dwelling says this: " 'But,' say the defendants, 'This is different for this is a hollow tile house. In this type house bits of plaster and mortar are on the bottom, and in this type of moving the owner has in addition to preparing the foundation, to chip and drypack.' This wording is not in the contract; there is not even a mention of hollow tile house in the document." The answer is obvious. The moving of a hollow tile house was the only subject of the contract. Appellant claims that the word "move" is ambiguous, gives a dissertation of the meaning of that word and cites as authority the case of *Schlitz* v. *Akers*, 210 Cal. 490 [292 P. 463]. In that case the question was whether or not the words "rock" and "rock foundations" include "shale." The court did not hold that there was any ambiguity in the contract and did not depend upon any parol testimony to interpret the words but used the simple expedient of looking up the word "shale" in Webster's New International Dictionary and found that it was defined as a type of rock. The court held that there was nothing to show that the term was used in a technical sense in the contract but that it was used in its general or popular sense. So, in the case before us, the word "move" is not ambiguous and is manifestly used in conformance with the general understanding of the word. The findings of which appellant complains do not, as he contends, read any new meaning into the word "move." They are concerned with the foundation for the hollow tile house which was the subject of the contract and which one party agreed to move in accordance with the best practices of house moving in that vicinity and under which the other party agreed to place the necessary foundation and underpinning and to complete the foundation within a specified time. The evidence which we have quoted was ample to support the findings and conclusions of the court that appellant had the duty to construct this foundation and do that which was incidental thereto.

Secondly, it is contended "The trial court erred in precluding extrinsic evidence to explain the ambiguity in the contract." The court expressly found and concluded that the contract was ". . . clear and unambiguous on its face. . . ." The only ambiguities suggested are in regard to the provisions of the contract concerning the moving of the house and the placing of a new foundation under it at the new location.

These provisions are clear and explicit. The cases cited by appellant in his brief are cases in which there are obvious ambiguities in the contract under consideration, the clearing up of which made parol evidence necessary. No circumstances are presented here which justify the application of any exception to the parol evidence rule. (Civ. Code, §§ 1638, 1639, 1640.)

Assuming that an ambiguity did exist, the court was justified in refusing the admission of the testimony proffered by appellant as it did not tend to interpret any clause of the contract, explain any alleged ambiguity or add anything to it. It had no materiality whatever and appellant could not have been injured by its exclusion. The evidence offered was two conversations which appellant's agent, Wayne Alles, had with Mr. Mitchell. The first one in its entirety was as follows: " 'Q. By Mr. Corske: Now, this conversation that you say occurred prior to the time that the agreement was signed, would you give us the substance of what was said, what Mr. Mitchell said and what you said with him, *with reference to the foundation?* A. I remember that I told Mr. Mitchell that the owner felt that the price that he had made was extremely high, but that the owner was willing to accept the contract at the price. There was never any discussion as to the price being out of line on my part. After that I said to Mr. Mitchell, ''Now, in order to let you understand my position in this matter, I have agreed with the owner to place an order for the foundation and to place the order with you for the moving of the house.'' ' " Asked to give the substance of the second conversation which took place several days after the contract had been signed, the witness said: ''I reviewed the conversation that was held at his office at the time the contract was signed, in stating 'Mr. Mitchell, you understand that there is no general contractor on this job, that I have let the contract to install the foundation, and placed the order with the plumbing concern, and you are expected to do everything that is necessary that we verbally discussed and agreed upon to see that the house is moved onto the foundation, is set down, and that everything will be in operation and in working order as it was before it was moved.' '' It would serve no purpose to set forth the offer of proof referred to by appellant for the reason that this offer was to prove the same conversations we have just set forth which had previously been stricken by the court. The only amplification of the testimony suggested was that the witness would testify to cer-

tain inadmissible conclusions and would also testify that several statements were not made at the conversation which no one claimed had been made.

■ Appellant's third point is that the court erred in rendering judgment for $300 for rental of equipment. The judgment was based on the provision of the contract that appellant would complete the foundation within 45 days in order to permit the removal of the timbers or pay $2.00 per day as rental. The court found on sufficient evidence that the appellant failed to do so until March 6, 1947, although the house had been moved onto the new location on July 19, 1946.

Finally, appellant contends that the respondents should be precluded from recovering the sum of $150 for raising the house for the reason that they neither alleged nor proved, as required in section 7031 of the Business and Professions Code, that they were licensed in accordance with the provisions of section 7026 of that code. He says that the court had therefore no jurisdiction. In that we cannot follow him. These sections have to do with the legality of contracts and penalties for failure to comply with the licensing requirements provided therein, not the jurisdiction of courts in the premises. ■ It is true that a general demurrer will be sustained to a complaint by a contractor on a contract such as is described in section 7026 of the Business and Professions Code which does not allege and prove that the contractor was licensed (*Sheble v. Turner,* 46 Cal.App.2d 762 [117 P.2d 23]), but the insufficiency of the complaint as to its allegations does not deprive the court of jurisdiction to try the action. (*McMorry v. Superior Court,* 54 Cal.App. 76, 80 [201 P. 797]; *Felton Water Co. v. Superior Court,* 82 Cal.App. 382, 388 [256 P. 255].)

■ The record before us was prepared under Rule 7(a), Rules on Appeal, of the Supreme Court and the certificate of the trial court shows that it is correct as to the proceedings had and the evidence offered in connection with the points to be raised on appeal as stated by appellant. Appellant, in conformity with the provisions of said rule, had set forth in detail the points he would raise on appeal. He did not mention the contention which he makes here. Rule 7(a), Rules on Appeal, of the Supreme Court reads, in part, as follows: "If the condensed statement purports to cover only a portion of the oral proceedings, the appellant shall state the points to be raised by him on appeal, and in such event shall be precluded from presenting any grounds for reversal not em-

braced within the points stated by him unless the reviewing court, on motion, shall permit him to present additional errors or grounds of appeal on such terms as it may prescribe.'' No motion was made by appellant to present additional errors or grounds of appeal. This being the record he is precluded from presenting this question now.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.