[Civ. No. 7912.   Third Dist.   Nov. 20, 1952.]

ALICE M. DAVIS, Individually and as Administratrix, etc., et al., Appellants, v. BASALT ROCK COMPANY, INC. (a Corporation) et al., Respondents.

Gardiner & Riede and Delger Trowbridge for Appellants.

Riggins, Rossi, King & Kongsgaard and King & Ghidella for Respondents.

VAN DYKE, J.—This is a motion to recall remittitur. In an action wherein movants as plaintiffs sought to have declared the respective rights and obligations of the parties to a written contract, a judgment was rendered adverse to their contentions and from that judgment they appealed. The matter of the appeal was referred to this court and our decision appears in 107 Cal.App.2d 436 [237 P.2d 338]. Therein will be found a statement of the case which we will not repeat. We affirmed the decision of the trial court. Movants asked for a rehearing, which was denied. They then applied to the Supreme Court for a hearing. This also was denied. Now the appellants, as moving parties, ask this court to recall its remittitur.

In the recent case of *Southwestern Inv. Corp.* v. *City of Los Angeles,* 38 Cal.2d 623 [241 P.2d 985], the principles governing the recall of a remittitur were stated as follows:

"That a remittitur may be recalled on the reviewing court's own motion, on motion or petition after notice supported by affidavits, or on stipulation setting forth the facts which will justify the granting of the order is now determined by rule. (Rule 25(d), Rules on Appeal; 36 Cal.2d at p. 22.) The question as to when the facts constitute grounds for the granting of the motion is resolved by the case law. Other than for the correction of clerical errors, the recall may be ordered on the ground of fraud, mistake or inadvertence. The recall may not be granted to correct judicial error. . . . In the McGee case [*In re McGee,* 37 Cal.2d 6 (229 P.2d 780)] it was pointed out that a decision is inadvertent if it is the result of oversight, neglect or accident, as distinguished from judicial error. In *Chin Ott Wong* v. *Title Ins. & Trust Co.,* 91 Cal.App.2d 1

[204 P.2d 387], an order recalling the remittitur was vacated when on analysis it appeared that the purpose of the recall was merely to amend the judgment on appeal.''

In *Rowland* v. *Kreyenhagen*, 24 Cal. 52, 59, it is stated: ''. . . [A]s a general rule, this court cannot exercise any jurisdiction over a cause in which the remittitur has been issued by its order and filed in the Court below. The office of the remittitur is to return the proceedings which have been brought up by the appeal to the Court below, and when the remittitur has been duly filed, the proceedings from that time are pending in that Court, and not in this; and, in regard to them, it is not competent for this Court to make any further order.

''But this general rule rests upon the supposition that all the proceedings have been regular, and that no fraud or imposition has been practiced upon the Court or the opposite party; for if it appears that such has been the case, the appellate Court will assert its jurisdiction and recall the case. Against an order or judgment improvidently granted, upon a false suggestion, or under a mistake as to the facts of the case, this Court will afford relief after the adjournment of the term; and will, if necessary, recall a remittitur and stay proceedings in the Court below. This is not done, however, upon the principle of resumption of jurisdiction, but upon the ground that the jurisdiction of the Court cannot be divested by an irregular or improvident order. In contemplation of law, an order obtained upon a false suggestion is not the order of the Court, and may be treated as a nullity.''

The motion here is made ''on the ground that fraud and imposition were practiced upon this Court, and upon the plaintiffs, cross-defendants and appellants in the above entitled matter, and misrepresentations were made to this Court by respondents' attorneys, and that inadvertence, oversight and accident occurred in the decision of this case by this Court, all of which caused this Court to reach an erroneous result, and that the granting of said motion and the reconsideration of said decision of this Court will be in the interests of justice.''

Movants contend that this court was wrongfully imposed upon through the making by respondents' counsel, in their briefs on appeal, of misstatements of fact concerning the contents of the record. They specifically set forth six of these alleged misstatements of fact. They say, quoting from the brief of respondents, that the following misstatements were

therein made: "1. 'Plaintiffs' attorney offered evidence at the trial in aid of the interpretation of the contract.' 2. 'The judgment of the trial court interpreting the contract is harmonious and consistent and that it is supported at all points by the evidence in the case.' 3. 'The trial court interpreted the contract in the light of conflicting evidence. There was not only evidence that supports the court's interpretation, but the overwhelming preponderance of the evidence supports it.' 4. 'These were all questions of fact to be determined by the trial court in interpreting the contract and its decision on conflicting evidence would be binding, but the overwhelming preponderance of the evidence sustains our statements.' 5. 'We have pointed out the fact that several of the findings are supported by the evidence in discussing the facts.' 6. 'The arguments advanced by appellants presented at most only a conflict in evidence.' "

The alleged misstatements are not misstatements of fact. They constitute argument of counsel. Whether such argument would withstand appellate scrutiny, the record considered, is not of moment here. ▮ A misstatement of material facts which would justify recall of the remittitur necessarily means a misstatement of facts presented in evidence—not a mere faulty conclusion as to the legal effect of those facts. Statements such as are here alleged to have constituted material misstatements of fact commonly appear in briefs filed and we think are not taken by appellate courts as anything more than argument. They are neither intended, nor fitted, to deceive the reviewing court.

It is next argued that this court, relying on the alleged misstatements of fact which we have set forth above, "made no attempt to analyze the evidence to see whether the interpretations of the contract by the trial Court were in any way justified." We do not doubt that counsel for movants here sincerely feel they are justified in the foregoing charge. They have demonstrated in their briefs on appeal, for rehearing here, and for hearing by the Supreme Court, that they are utterly in disagreement with all of the courts that have acted in the matter. We can only say that at least we made an attempt to analyze the evidence itself, relying not at all upon the argumentative statements quoted from respondents' briefs. We read the entire record having to do with the construction of the subject contract, and many portions of it we reread. ▮ Also we considered the contract which was being construed and of course that instrument is the first and highest

evidence as to the intent of the parties in executing it. If any defects exist in our appellate consideration of the case, a point which we do not concede, the defects are the result of judicial error and not of any alleged misrepresentations of fact made by counsel.

Having concluded that respondents' counsel made no misstatements of fact and having asserted that this court in its appellate consideration did not rely upon the argumentative generalizations quoted from their brief, we might, and perhaps should, indulge in no further discussion concerning these assignments of fraudulent conduct on the part of respondents' counsel. But movants state that things said in our written opinion demonstrate that this court acted under misapprehension as to material facts and circumstances of the cause, and we will discuss these assignments. In this connection movants criticize the following statement in the opinion we filed [p. 438] : ''They [plaintiffs below] sought to introduce, and were by the trial court permitted to introduce, evidence of the facts and circumstances attending the execution of the contract as an aid to its interpretation. We think the contract was sufficiently ambiguous to justify the introduction of such evidence. The result is that this court upon appeal is bound by the interpretation of the trial court where it is reasonable and is supported by the evidence introduced.'' It is argued that the above statement is not correct because ''the contract was not ambiguous, which respondent itself admits on page 71 of its opening brief.'' Movants state that the real truth is that their attorney at the trial ''only offered evidence on one point, namely, to determine the meaning of the word 'Pumicite,' which the Court interpreted in favor of the plaintiff.'' This action was begun, as we have said, to have the respective rights and obligations of the parties to a written contract declared. Movants, as plaintiffs below, pleaded that there existed an actual, substantial and bona fide dispute as to the meaning, interpretation and effect of the contract. Their complaint set forth some 23 separate claims made by them as to their rights and obligations under the subject instrument, and it was asserted these claims were disputed and denied by respondents. As used in the contract the meaning of the word ''pumicite'' was resolved by the trial court in a finding reading as follows:

''That contained in said real property is a deposit of an agglomerate of fragmental volcanic debris and pyroclastic material, consisting in large part of fragments of pumice,

subordinate portion of fragments of non-pumiceous lavas vary-
ing in size from fine sand up to fragments several feet in
diameter, and a mineral cementing the aforesaid fragments to-
gether containing silica, ferric oxide, alumina, lime, magnesia
and moisture; that the pumice in said material has been re-
ferred to by all persons involved herein as pumicite and is
herein referred to as pumicite; . . .''

In short, the trial court found that pumicite meant pumice.
But the 23 specifications of dispute as to the meaning of the
subject instrument contained many matters not resolved by the
trial court's finding as to the meaning of the word ''pumicite'';
and that these further differences were matters of concern
and the subject of evidence introduced at the trial is made
manifest by the record. In their opening statement at the
trial movants' counsel said: ''We seek an interpretation of a
contract dated May 6, 1938. We maintain by the first count
of our complaint that there are a number of differences; and,
as a matter of fact, the answer to the complaint acknowledges
that there are all of those differences.'' A few pages further
on in the transcript the same counsel said in effect that the
claim they were entitled to receive unadulterated pumice was
the basis of the controversy and that several other contro-
versies were involved. When the chief officer of respondent
corporation was being examined under section 2055 of the
Code of Civil Procedure we find the following:

''Q. [By plaintiffs' counsel] I assume that during that
first period there was considerable discussion of what the
contract was to be? A. That is right. Q. During that first
period was there any discussion of what pumicite is or was?
Mr. King [counsel for defendant]: I am going to object to
this question on the ground that it is incompetent, irrelevant
and immaterial, and that no proper foundation has been laid.
There are allegations of the complaint wherein the plaintiffs
allege certain construction of the contract, which, of course,
we deny, and we admit in our answer that we dispute their
claims; but we don't admit the contract is ambiguous and
we still claim that the contract speaks for itself and that
there was no ambiguity. Mr. Gardiner [counsel for the plain-
tiffs]: If the Court please, my understanding of a declara-
tory relief action invites the possibility of the Court investi-
gating the whole meaning of a contract, and apparently under
some circumstances that can result in calling black white.
The actual intention of the parties in drafting the contract

is under investigation in a declaratory relief action. I understood the Court had already passed on this matter by overruling a demurrer. This is the very question we are here to investigate. The Court: What do you propose to show here? Mr. Gardiner: I presume the objection made goes generally to the question of what the discussions were leading up to the actual signing of this contract. I have a very considerable number of questions. *I wish to show the entire conversation that took place for the purpose of interpreting that contract. I wish to find out from Mr. Streblow what the parties intended by the use of the word pumicite. I wish to find out what the parties intended by the reference to a material for plaster aggregate. I wish to find out and show what they intended by the expression 'other admixture,' and what they referred to by the expression 'blend,' and how they discussed those matters and what their agreement actually means on all those subjects.* The Court: Pumicite is first, and then what is next? Mr. Gardiner: Pumicite is the first one. The next is the general question of what was intended by the expression 'material for plaster aggregate,' and whether they had a particular kind of material in mind or whether they had mill run in mind, and then a discussion of the word 'blend,' whether that had to be a mix or a blend. *Well, I might say all the questions are raised in our complaint that we say the parties are disputing right down the line, the whole series of controversies between the parties. I wish to find out whether those subjects set forth in the complaint as the present controversies were discussed in Gordon Johnson's office.* The Court: You intend to set up the circumstances under which the contract was executed in order that you may have it interpreted generally and particularly with reference to the specifications which you have mentioned? Mr. Gardiner: That is right, Sir. The Court: All the elements which you have specified? Mr. Gardiner: That is correct. The Court: I think it is permissible, but I will hear you [speaking to respondents]. . . . The Court: He can't do that all at one time. He is trying to show by proof of surrounding circumstances that ambiguity does in fact exist. Mr. Gardiner: I might say that the pleadings disclose ambiguity. The Court: They allege ambiguity; they don't disclose it. Mr. King: We want the Court to interpret the meaning of the contract as it is written, not by something they said. The Court: I appreciate that is your side of the case. Mr. King: We don't allege an ambiguity. The Court:

No, but he does on his side, and he wants to prove that under the general scope of the pleadings.''

In view of the foregoing we can only conclude that it was not the movants' theory in the trial court to offer evidence on only one point, that is to determine the meaning of the word "pumicite." We think these quotations from the transcript support the statement in our opinion that appellants "sought to introduce, and were by the trial court permitted to introduce, evidence of the facts and circumstances attending the execution of the contract as an aid to its interpretation." We readily admit, as insisted upon by movants' counsel, that both sides frequently stated that in many respects concerning the disputes between them, indeed in most, the contract was not ambiguous, but on the contrary clear, certain and not to be misunderstood. Nevertheless, each side claimed that the contract clearly declared in the way they interpreted it, and just as clearly excluded the meaning contended for by the opposing side. Such a situation is a familiar one. Such a situation also lends support to a determination that a contract capable of stating so clearly such opposite things is sufficiently ambiguous to justify the calling in of all permissible aids for its proper interpretation.

It is next stated by the movants that this court in its opinion made the following misstatement of fact, indicating that it was acting under misapprehension: "During this period Davis, who alone placed orders for material did not complain that the material from the King deposit processed, as the court found was intended, did not meet the contract requirements." This quoted sentence from the opinion is made the subject of bitter attack. Concerning it, and after quoting it, the appellants in their petition for a rehearing said: "We cannot understand how this misconception of fact occurred. We are certain that Respondents will make no such claim. The dissatisfaction and complaints of Davis for a full ten years were so bitter that none of the parties involved will likely ever minimize them." And further concerning the quoted sentence it was said in the petition for hearing by the Supreme Court: "This statement is almost amusingly false to those who went through that ten years of bitter controversy." The quoted sentence is taken from context. The preceding sentence read: "Also upon this matter of the purity of the pumice the court had the benefit of the acts of the parties through the years *before any dispute arose.*"

(See *Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17].) We think enough, and perhaps too much, has been said about this matter which, after all, is minor. It certainly would furnish no justification for holding that the decision of this court was inadvertently or improvidently or irregularly made.

It is argued by movants that the holding of this court as expressed in its opinion that the contract in question was not assignable as far as the rights therein given to Mr. and Mrs. Davis were concerned was inadvertently made. We think nothing more need be said concerning this contention than to refer to our recorded opinion concerning the matter of assignability. It is apparent that we have here nothing in the nature of inadvertence. And as we have said, it is not proper in ruling upon the motion before us to discuss what cannot be anything but a claim of judicial error.

It is finally contended that this court, as a result of inadvertence and accident "failed to hold that the contract in litigation is survivable." Says counsel for movants: *"An entirely different question* . . . never expressly passed on by this or any other Court is whether the contract is *survivable* as distinguished from *assignable,* i.e., whether this contract survives to the administrators or executors of the Davises." The trial of this case was lengthy; there were competent counsel on both sides; there was an experienced and able trial judge presiding; there was opportunity to move for additional findings in respect of the matter of survivability if the parties deemed the matter important, and no such motion was made; the matter of survivability was at best only inferentially posed by the pleadings; and if the trial court did rule on survivability, the ruling can only justly be described as implied rather than express. No express holding upon the subject will anywhere be found in the entire record. Certainly this court did not say anything about the subject in its opinion and we think we may be excused in view of what we have just said and of the following additional considerations: Plaintiffs in the action were Alice M. Davis individually, Alice M. Davis as administratrix of the estate of J. E. Davis, deceased, and Hal H. Schwartz. By their complaint they specified the points of disagreement between themselves and the defendants under 23 specifications and they did not specify that the survivability of the contract was one of them. It might be argued that inferentially the plead-

ings posed the question of survivability in that the administratrix of the estate of J. E. Davis was a party, and in that as to the specifications of dispute it was alleged that "plaintiffs and their assignees" were entitled to certain rights, which is to say, though not expressly, that Alice M. Davis as executrix was one of those entitled to such rights. However, beyond that the pleadings do not go. The answer of defendants did raise the issue of assignability but set forth no claim dependent upon lack of survivability. The findings say nothing expressly about survivability but inferentially it might be argued that a ruling was made that the contract was not survivable. That occurs in this way: The court found "That upon the death of said J. E. Davis his interest in said contract . . . terminated and the power of plaintiff Hal H. Schwartz as attorney in fact of said decedent terminated." The finding referred to occurred within the following context: There was a precedent finding that on October 31, 1946, J. E. Davis and Alice Maud Davis executed to plaintiff Hal H. Schwartz a power of attorney authorizing him as their agent to make purchases under the contract; that J. E. Davis had died and Alice M. Davis had been appointed and qualified as his administratrix. Then followed the finding quoted. It is apparent that the trial court was concerned in that portion of the findings with the continued existence in Hal H. Schwartz of a power of attorney authorizing him to make purchases as the agent of the Davises and it is difficult, in view of the context, to read the finding concerning terminations of the interest of J. E. Davis upon his death as relating to anything other than the power of attorney he had given during his lifetime. We may state further that the memorandum opinion of the trial court was made part of the record and therefrom it appears that while the trial court declared, first, that the contract had not been assigned to Schwartz, and, second, that it was not assignable, yet nothing was said concerning survivability. Passing on to the opening brief we find that survivability was referred to in one of the headings, which read as follows: "Contrary to the express terms of the contract and the surrounding circumstances the court found that the contract was not transferable by the Davises *or by death succession.*" (Emphasis added.) Thereafter the argument was expanded and the expanded argument had nothing to say regarding survivability, but was devoted to assignability. The argument began thus: "Those [referring

to the quoted findings] are nothing more than legal conclusions at the best, and merely indicate that the trial Court thought that the contract on its face was nonassignable as a matter of law'' The reply brief discussed assignability, respondent to the contentions of the appellants upon that subject, but said nothing as to survivability. The closing brief omitted any discussion of survivability, though devoting some space to assignability. We granted appellants' request for permission to file supplemental authorities and there was filed a ''Summary of Principal Issues'' wherein one of five issues was thus stated: ''Is the contract assignable: Will it survive the death of J. E. Davis?'' The petition for a rehearing devoted one heading to assignability, but said nothing of survivability. At oral argument the following was said, *inter alia*: ''The trial court decided because there was some economic hardship involved . . . they should be allowed to escape. Although it said the contract was assignable, nevertheless the trial court said it was not assignable and when J. E. Davis died it died with him and his administratrix took nothing whatever. . . . The trial court said, 'I am going to relieve you by finding it died with the people who first wrote it.' '' Nothing further appears in our record of the oral argument with reference to survivability.

The foregoing makes it clear that, first, movants are correct in their statement that no court has expressly passed upon the question of survivability as distinct from assignability. It shows further that the matter of survivability, if the parties considered it to be an issue and material, was at most but sketchily presented to this court as an issue; that after this court's opinion had been handed down appellants did not in their petition for rehearing call this court's attention to the fact that we had not therein treated the question of survivability and that movants did not ask that a rehearing be granted in order that that issue might be expressly passed upon. Under these circumstances we think that the fact that this matter of survivability was not mentioned in the opinion of this court affords no reason whatever for the recall of the remittitur. To permit movants to have the remittitur recalled for this reason would be to permit litigants to present the merits of an appeal piecemeal. That cannot be done. There was ample opportunity to present the issue of survivability squarely. This was not done—not even on petition for rehearing here, nor on petition for hearing in the Supreme Court. Pertinent here is what was said in *Chin Ott*

*Wong* v. *Title Ins. & Trust Co.,* 91 Cal.App.2d 1, 3 [204 P.2d 387]:

"We are impressed that the facts in the instant case bring it within the rule that if a party is dissatisfied with the judgment as rendered in an appellate court, his remedy is to petition for a rehearing or modification of the judgment within the time allowed by law and before the remittitur has issued."

The motion to recall remittitur is denied.

Peek, J., and Schottky, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 15, 1953.