[Civ. No. 19895.   Second Dist., Div. Two.   May 11, 1954.]

WILLIS T. ALBAUGH, Appellant, v. MOSS CONSTRUC-TION COMPANY (a Corporation) et al., Respondents.

Donald K. Gault and Hampton Hutton for Appellant.

Charles J. Katz and Samuel W. Blum for Respondents.

MOORE, P. J.—By conventional allegations, appellant sued to recover $28,617.39 on an "oral contract." The objection of respondents to the receipt of any evidence on the ground that the complaint does not state a cause of action was sustained and judgment against appellant was entered. Hence, this appeal.

Appellant, on behalf of himself and his partner Reichert, sued to recover on an "oral contract, the exact terms of which are unknown to plaintiff." He alleged that respondents were to "provide the labor, materials and supervision for erection and construction of 219 houses and to act as general contractors," and appellant was to act as a supervisor and director of construction labor in installing the rough carpentry on the houses; that appellant was to be paid a wage of $125 per week and to receive "as incentive pay, to be divided with a cosupervisor, Jacob Reichert, the difference between the actual cost per square foot for the rough carpentry and fifty cents per square foot, if any"; that he and Reichert spent 13 weeks on the job for which they were paid "$125 per week on account of wages" but that they have received no part of the sum of $28,617.39 due them on the square footage of construction as agreed. He demands a foreclosure of a mechanic's lien for such sum.

But promptly on the opening of the trial it was disclosed that the partners had never made but one contract with respondents; that it was in writing and was thereupon marked Exhibit A and offered to the court for consideration. Pursuant to the court's request, both parties made opening statements. Appellant stated substantially the contents of his complaint. Also, he did not desire "to go into whether we have a written agreement or oral." He stated that all payments were made and all materials were furnished by the Moss Construction Company, hereinafter referred to as "Moss"; that they did all the hiring and firing but all "termination checks" issued by Moss were handed to the employee

by Albaugh or Reichert; that the latter were advised by Moss by weekly progress sheets as to cost up to date whereby they could determine their bonus. A written contract was to be prepared.

Respondents stated that in May, 1951, Cecil Moss asked the partners for a price on doing the rough carpentry for the 219 houses and they finally agreed to accept "$125 per week and fifty cents per square foot"; that on June 11, 1951, the written contract, Exhibit A, was signed by respondents and with their consent by Albaugh only; that the partners employed all labor and discharged them without consulting respondents; that time records were kept by the partners and were used for computing wages and were delivered to respondents every Wednesday for preparation of the pay-rolls, but no record was kept of the partners' time. Also, they paid for the sharpening of their saws. Neither the opening statement of appellants nor Exhibit A discloses otherwise than that they were "contractors" in the usual sense of that word. The writing begins with the declaration that they are the "contractor"; by the first article the contractor agrees to furnish all material, labor, equipment; the contractor shall complete the several parts of the whole work at the rate of six houses per day; the contractor recognizes, etc. If none of the methods suggested for determining the value of work is agreed upon "Contractor shall proceed with the work . . . Contractor shall keep a correct account . . . if the Contractor shall neglect . . . Contractor shall maintain insurance . . . Contractor shall do cutting, fitting . . . Contractor shall not endanger . . ."

Appellant admitted that (1) at his first meeting with Cecil Moss in May it was agreed there was to be a written contract; (2) the word "price" in Exhibit A referred to the 50 cents per square foot only and not to the weekly wage, and included saw sharpening; (3) under his claim of an "oral agreement" there never was a meeting of minds; (4) Exhibit A on its face is a contract used with subcontractors, and it is a contract; (5) the typed portions of Exhibit A are the same as the asserted oral agreement; (6) the writing has superseded the claimed, oral contract.

Furthermore, coming to the vice of the complaint, it was stipulated that neither on June 11, 1951, nor at any time during the performance of the contract was either of the partners licensed as a "contractor" and Exhibit A is the

only written contract before the court and was the contract pleaded in the complaint, as amended. Appellant then moved that his complaint be amended by inserting the italicized words in the following: "That on or about May 29, 1951, plaintiff entered into an oral contract, *which was subsequently merged into a written contract which is Exhibit A of the offer of proof.*" After such motion had been granted, appellant admitted that this changed his complaint to one based solely upon Exhibit A. The court thereupon sustained respondents' objection to appellant's offer of proof on the ground that the amended complaint is based upon the written contract. Other matters contained in the written offer of proof either tend to vary the terms of the writing or are incompetent. Since there is no allegation in the complaint that the partners were licensed contractors, it is clear that the pleading does not state a cause of action. ▮ Inasmuch as the sustaining of an objection to the introduction of any evidence in support of an insufficient complaint leaves the plaintiff in the same position as when a general demurrer is sustained without leave to amend (*Shattuck* v. *Chase*, 86 Cal.App.2d 810, 812 [195 P.2d 475]; *Calhoun* v. *Calhoun*, 81 Cal.App.2d 297, 299 [183 P.2d 922]), we proceed to explore the merits of the appeal.

The amendment of the complaint by referring to Exhibit A incorporates the writing to the same extent as though it had been interlined in the original pleading. ▮ The terms of the contract cannot be changed by any amount of declaration, and any allegation contradictory of the alleged writing or which falsely construes it, must be disregarded. (*Alphonzo E. Bell Corp.* v. *Bell View Oil Syndicate*, 46 Cal.App.2d 684, 691 [116 P.2d 786]; *Pimental* v. *Hall-Baker Co.*, 32 Cal. App.2d 697, 701 [90 P.2d 588].) ▮ Therefore, the contract when so incorporated may be considered along with the allegations in determining whether the complaint is valid. (*North Side Property Owners' Assn.* v. *Hillside Memorial Park*, 70 Cal.App.2d 609, 614 [161 P.2d 618].) ▮ It is likewise elemental that where an agreement of the parties litigant has been reduced to writing, their relationship must be determined therefrom. (*Davis* v. *Basalt Rock Co.*, 114 Cal.App.2d 300, 303 [250 P.2d 254]; *Cash* v. *Blackett*, 87 Cal.App.2d 233, 236 [196 P.2d 585]; *Batt* v. *San Diego Sun Pub. Co., Ltd.*, 21 Cal.App.2d 429, 434 [69 P.2d 216].) ▮ The contract being clear and nonambiguous, its inter-

pretation is one of law. (*Batt* v. *San Diego Sun Pub. Co.*, *supra*, 437.)

It is known to every lawyer and to most men of the general public that the state has a Department of Professional and Vocational Standards whose functions are to regulate the behavior of contractors. (Bus. & Prof. Code, div. 3, ch. 9, §§ 7000-7145.) Contractor is defined to be a person who undertakes to, or offers to undertake to submit a bid to "construct, alter, repair, add to, subtract from, improve, erect or demolish any building," etc. (*Howard* v. *State*, 85 Cal. App.2d 361, 363 [193 P.2d 11].) Section 7030 makes it a misdemeanor for any person who acts in the capacity of a contractor without a license. Section 7031 provides that "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

To be exempt from the license law, one must be an employee with wages as his sole compensation. (Bus. & Prof. Code, § 7053.) By virtue of that provision, it cannot with reason be said that an action by a contractor for $28,617.39 derived from a computation of construction at 50 cents per square foot is maintainable if he had no license. The amount in suit is a specific recompense for a designated result, a profit upon the labor of the men employed by the partners. While all compensation for effort furnishes incentive to the performer, it is a bold dream for a builder to say that $28,617 promised him for construction was *incentive*. That word when applied to the ordinary transaction signifies some perquisite of less value than the chief consideration. But in supervising the construction work for respondents, the partners were paid $1,625 for 13 weeks. Now, they ask for more than $28,000 as incentive pay for their supervising labors.

By virtue of their failure to obtain a license before they embarked upon their venture with respondents, their contract is illegal. For that reason they have no standing before the law; they have incensed the sovereign power and no court can honor their demands. (*Loving & Evans* v. *Blick*, 33 Cal.2d 603, 609 [204 P.2d 23]; *Howard* v. *State*, 85 Cal.App.2d 361, 364 [193 P.2d 11]; *Franklin* v. *Nat C.*

*Goldstone Agency*, 33 Cal.2d 628, 632 [204 P.2d 37].) In order to be entitled to prevail in a legal action, a contractor must allege and prove that he was licensed at all times during the performance of his contract. (Bus. & Prof. Code, § 7031; *Shields* v. *Shoaff*, 116 Cal.App.2d 306, 309 [253 P.2d 1002]; *Marogna* v. *Mitchell*, 104 Cal.App.2d 799, 805 [233 P.2d 70].) ■ The same rule obtains as to an action to foreclose a mechanic's lien by a contractor. ■ The difference between the natures of the relations of the employee and the contractor in their relations to the source of compensation is vast. An employer may give orders and direct an employee with reference to the acts to be done; also, he may terminate the employment at any time before the work is finished. But where a contractor has an agreement to deliver a finished job, a termination, without cause, of his efforts constitutes a breach of contract. An employee may quit at pleasure, but the contractor is bound to his task until it is finished. (*Helmuth* v. *Industrial Acc. Com.*, 59 Cal.App. 160, 161, 162 [210 P. 428].)

The subcontractor is also a contractor (Bus. & Prof. Code, § 7026. A person is nonetheless amenable to the act because he is a subcontractor. He is as such required to obtain a license and must allege such fact in order to maintain an action on his contract. ■ Even though the contract of a subcontractor provides that the owner furnish plans and materials and reserved the right to direct how the work should be done, and though he advanced the weekly payroll according to the number of men at work, and although the contractor-in-chief retained the privilege of making alterations, additions to or repairing omissions from the structure to be built, yet such provisions do not change the relation of the subcontractor to that of a mere servant. (*Mickel* v. *Althouse*, 38 Cal.App. 321, 326 [176 P. 51]; *Green* v. *Soule*, 145 Cal. 96, 99 [78 P. 337].) ■ And where the language of the contract is clear and its meaning is certain, its effect and the relation of the parties becomes a question of law. (*Ibid.*)

■ The payment of the carpenters with the checks of Moss was a mere matter of mechanics and did not serve to make the partners employees instead of subcontractors. Such advances were charged against the contract price. The partners did the work in accordance with their contract and had full control over the carpenters at all times. The manner in which their wages were paid is a matter of no consequence. (*Houghton* v. *Loma Prieta Lbr. Co.*, 152 Cal. 574, 577 [93

P. 377]; see *Raftis* v. *McCloud River Lbr. Co.*, 35 Cal.App. 397, 400 [170 P. 176]; *Fay* v. *German General Benevolent Soc.*, 163 Cal. 118, 121 [124 P. 844].)

Finally, the nature of the relation of Moss to appellant is cemented by the covenant in the contract that the partners were charged, not only with the labor of their carpenters, but also with all payroll taxes, saw sharpening and compensation insurance. Such charges are never made against an employee.

From the foregoing, it is established that appellant and Reichert were independent contractors, not employees, and therefore are subject to the cited statutes. Appellant was required to allege in his complaint that he and Reichert were licensed contractors. (Bus. & Prof. Code, § 7031.) ▆▆▆ Neither the language of their contract nor any presumption nor inference arising therefrom will serve as a substitute for such allegation. (*Hayt* v. *Bentel*, 164 Cal. 680, 686 [130 P. 432].)

### Appellant Bound by Parol Evidence Rule

Despite the mutations of the complaint from an action based on an alleged oral contract to its merger into an action founded on a writing which shows the partners were contractors, appellants contend on appeal that (1) there is no code provision requiring a supervisor or superintendent of construction to be licensed; (2) the opening statement contains no fact to show necessity for a license; (3) the "written contract . . . is not a part of the complaint and plaintiff did not present it in the opening statement"; (4) parol evidence is admissible in spite of a written contract under many circumstances.

Such contentions are not supported by the record. As to number 1, we have quoted the statute requiring a contractor to be licensed. There is no equivalent allegation to overcome the written contract. As to point 2, the opening statement declared that in addition to the agreement to pay the partners $125 per week "straight salary . . . they were to receive a bonus of the difference between fifty cents a square foot of house area and the cost of labor and the carpentry . . . the cost of compensation insurance and . . . payroll deductions." In addition thereto, appellant finally admitted the written contract and stipulated that his oral agreement was merged in the writing. That Exhibit A shows the necessity for a license cannot be seriously denied.

██ As to point 3, while the contract was never physically attached to, or by reference made a part of, the complaint, by appellant's admission to the court that there was only one contract and it was Exhibit A, he stood in the same position as though it had been pleaded *in haec verba*.

As to point 4, it speaks the truth in general terms only. But appellant was "fenced in" on his only written contract with respondents. He never abandoned it or sought its revision. ██ The only evidence he ventured to suggest as proof of his claim was the conversations that occurred in the "prior oral negotiations," 13 days before Exhibit A was signed. All such conversations were merged in the writing, which fact appellant admitted. By no asserted event or conversation occurring after the execution of the contract was it altered or modified. His contention at all times is that he had a prior, parol agreement. But since his oral understanding was merged in Exhibit A, it is destitute of significance. (Civ. Code, § 1625; *Parker* v. *Meneley,* 106 Cal.App. 2d 391, 400 [235 P.2d 101].) In the Parker case, *supra,* page 399, the court said, "The written instrument and the oral agreement, if there was one, eventuated from the same previous negotiations and covered the same subject matter . . . the result was an integrated agreement to which the parol evidence rule concerning such documents would apply. . . . The parol evidence offered here, simply contradicted the terms of the written instrument. It did not tend to show in any way that the parties executed the contract for some extrinsic purpose, such as sham or artifice, or that it was intended for some purpose other than to set forth their respective rights and obligations."

The question is pertinent here. The oral agreement claimed to have been made on May 29, 1951, can serve no lawful purpose. Neither fraud, nor accident, nor surprise, nor any other occurrence is pleaded as a basis for supplanting the written contract with the preliminary parol commitment later merged in the writing.

Judgment affirmed.

McComb, J., and Fox, J., concurred.