[Civ. No. 16049.    Second Dist., Div. Three.    May 4, 1948.]

JOSEPH   HOWARD, Appellant, v. THE   STATE   OF
CALIFORNIA et al., Respondents.

William J. Clark and David Aaron for Appellant.

Fred N. Howser, Attorney General, Bayard Rhone, Deputy Attorney General, Harold W. Kennedy, County Counsel, Edward H. Gaylord, Deputy County Counsel, Ray L. Chesebro, City Attorney (Los Angeles), Donald M. Redwine, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondents.

SHINN, Acting P. J.—Plaintiff instituted this action against the State of California and various state and county officials, seeking to restrain them from prosecuting him for violations of the Business and Professions Code, by reason of his entering into contracts as a painter for considerations other than wages. From his complaint it appears that he is recognized as a master painter in the painting trade which is, and long has been, his only means of supporting himself and his family. His business is not one that is exempted from the operation of the code. Much contract work is available to him and if he is required to work for wages his opportunity for full employment will be greatly restricted. Although he is a qualified and skilled painter he does not possess a license issued under the code, and is unable to procure one. He has been convicted in the municipal court of carrying on his business without a license, and he alleges that unless the defendants are restrained they will continue to prosecute him to the extent of preventing him altogether from carrying on his trade, except for the consideration of wages, the effect of which will be to greatly impair his ability to support himself and his family. The individual defendants demurred and the matters were assigned to, and were heard by, three judges of the superior court who constitute the appellate department of the superior court. Plaintiff's attorney stated to the court that he waived his right to amend his amended complaint; the demurrers were sustained without leave to amend and judgment was entered for the defendants. Plaintiff appeals.

The grounds of appeal are, (1) the code does not apply to the business of painting buildings, or other structures, (2) the section defining contractors is void for uncertainty, and (3) that if the act be construed to have application to the business of painters, and is not void for uncertainty, it is violative of section 10, article I, and of the Fifth Amendment to the Constitution of the United States, and of section 1,

article I and sections 11 and 21 of article I of the state Constitution.

By section 7028 of the code it is made a misdemeanor for any person to engage in the business or act in the capacity of a contractor without having a license therefor, unless such person is particularly exempted from the provisions of the act. The term "contractor," as used in the act, is defined in section 7026, which reads: "The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, except an owner who contracts for a project with a licensed contractor or contractors or a licensed architect or a registered civil engineer acting solely in his professional capacity, who in any capacity other than as the employee of another with wages as the sole compensation, undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation, or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith."

■■ Appellant's first and second propositions will be considered together. The first clause of the section states, "the term contractor for the purposes of this chapter is synonymous with the term 'builder' " etc. Appellant quotes the common definition of builder found in 17 Corpus Juris Secundum, page 333, "a builder is one who builds or whose occupation is that of building; specifically one who controls or directs the work of construction in any capacity," and he says that if only builders are contractors within the meaning of the act, "This, of course, would exclude one whose occupation is that of spreading pigment on the surface of a building already erected; and it must be admitted that such definition seems, at first, to be inconsistent with the further provision that a contractor is one who, for compensation other than wages, alters, repairs, or adds to a building or structure." But this inconsistency, he argues, would not furnish a reason for disregarding the definition of "contractor" found in the first clause. In other words, he would have us give controlling effect to the first clause, which would mean that those whose business is to "build" any building, etc., would be con-

tractors, and those whose business is to "alter, repair, add to," etc., buildings and other structures, would not be contractors unless the alterations, repairs, or additions also constituted building. We go the other way around to arrive at our interpretation. If all contractors who engage in the described work are not builders, under the common definitions of those words, they are made so by the special definition in the act, and this definition is, of course, controlling. Therefore, one who undertakes to do, or does, "construct, alter, repair, add to, subtract from, improve, move, wreck or demolish, any building" etc., is a contractor and, if you wish, also a builder. There is, therefore, only one definition of contractor in the section. We do not understand appellant's contention to be that painting a structure may not be a part of the construction of it or may not alter, repair, add to or improve it. It is sufficient, therefore, to say that each of these operations might involve painting the structure, and it necessarily follows that a painting contractor is a contractor under the statutory definition.

Plaintiff's third proposition is based upon the blunt assertion that regulation of the business of painting contractors is not within the legislative power of the state, in that such regulation has no reasonable tendency to promote the public health, morals, safety or welfare. We are asked to hold, as a matter of judicial knowledge, that there is no public interest to be served by the regulation of that business, and thus to substitute our opinion for the judgment of the Legislature. We do not know it to be a fact, but upon the contrary believe that the regulation of the building trades meets a public need.

In *Hunt* v. *Douglas Lumber Co.*, 41 Ariz. 276 [17 P.2d 815], the court had under consideration a regulatory act comparable in its main features to our own. The same arguments were made there as to the claimed unconstitutionality of the act. The court held it to be valid, quoting from and approving *Alvarado* v. *Davis*, 115 Cal.App. Supp. 782 [6 P.2d 121], in which it was held that "the entire object of the statute is that protection of the public against fraudulent and illegal practices which has always been recognized as a distinctive characteristic of statutes which are not mere revenue measures. (*Levinson* v. *Boas*, 150 Cal. 185, 193 [88 P. 825, 11 Ann.Cas 661, 12 L.R.A.N.S. 575]; *Payne* v. *DeVaughn*, 77 Cal.App. 399, 403 [246 P. 1069]; *Van Wyke* v. *Burrows*, 98 Cal.App. 419 [277 P. 190].)" A similar statute requiring

contractors to procure licenses was held to be a proper police measure for the protection of the public in *Dow* v. *United States*, (C.C.A. 10th Circ.) 154 F.2d 707. To the same effect were *Ross-Frankel, Inc.* v. *State*, 179 Tenn. 320 [165 S.W.2d 590], and *State ex rel. Reynolds* v. *St. Petersburg*, 133 Fla. 766 [183 So. 304, 118 A.L.R. 667]. We do not agree that there is less reason for the regulation of the business of painting contractors than that of other contractors who employ means, other than painting, by which a structure is wholly fabricated, or is repaired, altered or improved, so as to effect a change in its condition to one substantially different. The purpose of the act is to guard the public against the consequences of incompetent workmanship, imposition and deception. In order to procure a license an applicant is required to make a showing of good character and of a degree of experience and general knowledge of the building, health, safety and lien laws of this state, and of the rudimentary administrative principles of the contracting business, as the board deems necessary for the safety and protection of the public. (§§ 7068, 7069.) Willful breaches of contract and other willful and fraudulent acts, causing material injury to another, furnish grounds for suspension or revocation of a license. (§§ 7109-7119.) There is no less opportunity for dishonesty in the painting trade than in the other building trades. If there is no appreciable likelihood of it, or none at all, the Legislature has not recognized either of those conditions. There is good reason, also, for distinguishing between painting by contract and by day labor, since in the former, control of the work is solely with the contractor, while in the latter the work is under the control of the employer, who may direct that it be done as he wishes to have it done.

Among the many cases cited by appellant we have found none that supports his position. He cites *Howard* v. *Lebby*, 197 Ky. 324 [246 S.W. 828, 30 A.L.R. 830], as directly in point. The court was considering the validity of a contract of a painting contractor who was unlicensed under a local ordinance. It was held that the ordinance was a revenue and not a regulatory measure and it was stated, *arguendo*, that the business was one that could not be regulated or prohibited under the police power. While broad language was used in the opinion the court did not decide what the legislative body could not lawfully have done but only what it had done. The conclusion was that noncompliance with a licensing or-

dinance intended solely as a revenue measure did not invalidate the plaintiff's contract. Nothing more was decided. The same court had previously upheld a licensing act regulating the occupation of plumbing in cities of the first class, upon the ground that "the purpose of the act was to protect the public generally from incapacity, ignorance, want of skill or fraud" etc. (*City of Louisville* v. *Coulter*, 177 Ky. 242 [197 S.W. 819, L.R.A. 1918A 811].)

Finally, appellant argues that the general law affords the public all the protection it needs against possible frauds in the business in which he is engaged; that damages, both compensatory and exemplary, may be recovered for losses sustained through incompetency, deceit and unfair practices, and that regulatory legislation was uncalled for. This, however, was a matter for the Legislature. The statute in question expresses the judgment of the Legislature that the prospect of having to pay damages for incompetence, fraud and breach of contract, is not an adequate deterrent from wrongful practices in the building trades. It is a valid statute, and it applies to painting contractors.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.