[L.A. No. 30173. In Bank. Aug. 9, 1974.]

RAY GRIMES, Plaintiff and Respondent, v.
LEO B. HOSCHLER, as Registrar, etc., et al.,
Defendants and Appellants.

## COUNSEL

Evelle J. Younger, Attorney General, and Ronald F. Russo, Deputy Attorney General, for Defendants and Appellants.

Harrison W. Hertzberg and Joshua Kaplan for Plaintiff and Respondent.

## OPINION

SULLIVAN, J.—Defendants Leo B. Hoschler, the Registrar of Contractors (registrar), the Contractors' State License Board (board),[1] and the mem-

[1] See Business and Professions Code sections 7000.5 and 7011.

Hereafter, unless otherwise indicated, all section references are to the Business and Professions Code.

bers of the board appeal from a judgment entered in a proceeding in administrative mandamus ordering issuance of a peremptory writ of mandate commanding defendants to set aside their decision revoking the contractor's license of plaintiff Ray Grimes and to reinstate plaintiff's license.

The Registrar of Contractors filed an accusation (§ 7091; Gov. Code, § 11500 et seq.) against Grimes asserting as the sole ground for discipline that the latter had violated section 7113.5[2] in that by obtaining an adjudication in bankruptcy he had avoided lawful obligations incurred by him as a contractor. A hearing officer found the accusation to be true and proposed that plaintiff's license be revoked. The registrar adopted the proposed decision of the hearing officer.

 Grimes sought review of that decision by administrative mandamus. (Code Civ. Proc., § 1094.5.)[3] He claimed that the provision in section 7113.5 establishing the basis for revocation of his license frustrates the purposes of the Bankruptcy Act under federal law and therefore is invalid under the supremacy clause of the federal Constitution. (U.S. Const., art. VI, cl. 2.) Relying on *Perez* v. *Campbell* (1971) 402 U.S. 637 [29 L.Ed.2d 233, 91 S.Ct. 1704], the superior court entered judgment in favor of Grimes, ordering issuance of a peremptory writ of mandate directing defendants to set aside the decision and ordering reinstatement of Grimes' license. This appeal followed.

Defendants contend that the pertinent provision in section 7113.5 is not in conflict with that part of the Bankruptcy Act allowing a debtor to discharge certain debts in a bankruptcy proceeding. (11 U.S.C.A. § 35.) They argue that *Perez* v. *Campbell, supra,* 402 U.S. 637, is distinguishable from the present case and that our opinion in *Tracy* v. *Contractors' State License Board* (1965) 63 Cal.2d 598, 599 [47 Cal.Rptr. 561, 407 P.2d 865], in which we sustained section 7113.5 against constitutional attack, is still controlling.[4]

---

[2]Section 7113.5 provides in part: "The avoidance or settlement by a licensee for less than their full amount of the lawful obligations of such licensee incurred as a contractor . . . by (a) adjudication in bankrupcty . . . constitutes a cause for disciplinary action."

[3]The petition for a writ of mandamus did not specifically refer to Code of Civil Procedure section 1094.5; however, it indicated that Grimes was seeking to set aside the decision of the registrar. Inasmuch as the registrar in his adjudicatory function is required by law to conduct a hearing in which evidence is taken (§ 7091; Gov. Code, § 11500 et seq.), it is clear that the standards for administrative mandamus expressed in section 1094.5 of the Code of Civil Procedure apply to this proceeding. (See Cal. Administrative Mandamus (Cont. Ed. Bar) § 2.3, pp. 10-11; Cal. Civil Writs (Cont. Ed. Bar 1970) § 5.8, pp. 67-68.)

[4]Defendants also contend that section 7113.5 represents a valid exercise of the police power of this state. (See *Tracy* v. *Contractors' State License Board, supra,*

In *Perez* v. *Campbell, supra,* 402 U.S. 637, 652 [29 L.Ed.2d 233, 243-244], the United States Supreme Court struck down a state statute providing that a discharge in bankruptcy did not exonerate a judgment debtor from the requirements of a state law in respect to the financial responsibility of motorists. The state law involved there authorized the suspension of a driver's license and vehicle registration for nonpayment of a judgment debt attributable to an automobile accident. Under the provisions of the challenged statute, until the judgment was paid the suspension remained in effect and the judgment debtor continued under its restraint despite the fact that the debt might later be discharged in bankruptcy.

The *Perez* court carefully delineated the issue presented and explicated the principles for its resolution. The basic question, the high court explained, "is the power of a State to include as part of this comprehensive enactment designed to secure compensation for automobile accident victims a section providing that a discharge in bankruptcy of the automobile accident tort judgment shall have no effect on the judgment debtor's obligation to repay the judgment creditor, at least insofar as such repayment may be enforced by the withholding of driving privileges by the State." (*Id.,* at p. 643 [29 L.Ed.2d at p. 238].) The appropriate test for determining the validity of such state power was described as follows: "Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." (*Id.,* at p. 644 [29 L.Ed.2d at p. 239].)

In applying this test, the *Perez* court examined the purposes of the two acts. Relying on the construction of the state statute by the Arizona courts, the high court concluded that the "sole emphasis in the [state] Act is one of providing leverage for the collection of damages from drivers who either admit that they are at fault or are adjudged negligent." (*Id.,* at pp. 646-647 [29 L.Ed.2d at p. 241].) The court then examined the federal act: "This Court on numerous occasions has stated that '[o]ne of the primary purposes of the bankruptcy act' is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure

63 Cal.2d 598, 599; *Hope* v. *Contractors' etc. Bd.* (1964) 228 Cal.App.2d 414, 420 [39 Cal.Rptr. 514].) We have no doubt that this state has an interest in regulating the financial affairs of its licensed contractors. However, notwithstanding this state interest, such regulation may not operate to frustrate the achievement of objectives under federal law. (See *Halpin* v. *Superior Court* (1972) 6 Cal.3d 885, 900 [101 Cal.Rptr. 375, 495 P.2d 1295].)

and discouragement of preexisting debt.' [Citations.]" (*Id.,* at p. 648 [29 L.Ed.2d at pp. 241-242].)

The Supreme Court concluded that the state statute could not stand because of the apparent conflict between state law and federal law. (*Id.,* at p. 652 [29 L.Ed.2d at pp. 243-244].) ▪ In reaching this conclusion the *Perez* opinion made clear that the controlling principle is whether a state statute interferes with and frustrates a federal statute and not merely whether the former is designed for some conceivable state purpose. In other words, the existence *vel non* of a conflict depends on the *effect* of the state statute and cannot be determined merely by a consideration of its *purpose.* Quoting from *Hines* v. *Davidowitz* (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 587, 61 S.Ct. 399], the Supreme Court declared that " '[i]n the final analysis,' our function is to determine whether a challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (*Perez* v. *Campbell, supra,* 402 U.S. at p. 649 [29 L.Ed.2d at p. 242].)

The *Perez* court explained that a different principle was applied in two earlier decisions involving similar state statutes. (*Kesler* v. *Department of Public Safety* (1962) 369 U.S. 153 [7 L.Ed.2d 641, 82 S.Ct. 807] and *Reitz* v. *Mealey* (1941) 314 U.S. 33 [86 L.Ed. 21, 62 S.Ct. 24].) "[In *Kesler* the] statute, in short, frustrated Congress' policy of giving discharged debtors a new start. But the *Kesler* majority was not concerned by this frustration. In upholding the statute, the majority opinion did not look to the effect of the legislation . . . . [It considered only] the purpose of the state legislation and upheld it because the purpose was not to circumvent the Bankruptcy Act but to promote highway safety." (*Perez* v. *Campbell, supra,* 402 U.S. at p. 650, fn. omitted [29 L.Ed.2d at pp. 242-243].) "The opinion of the Court in *Reitz* was similarly concerned, not with the fact that New York's financial responsibility law frustrated the operation of the Bankruptcy Act, but with the purpose of the law, which was divined as the promotion of highway safety." (*Id.,* at p. 651 [29 L.Ed.2d at p. 243].)

Finally, *Perez* emphasized that the ruling of *Kesler* and *Reitz* was no longer valid. "We can no longer adhere to the aberrational doctrine of *Kesler* and *Reitz* that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report

articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law. In view of the consequences, we certainly would not apply the *Kesler* doctrine in all Supremacy Clause cases. Although it is possible to argue that *Kesler* and *Reitz* are somehow confined to cases involving either bankruptcy or highway safety, analysis discloses no reason why the States should have broader power to nullify federal law in these fields than in others. Thus, we conclude that *Kesler* and *Reitz* can have no authoritative effect to the extent they are inconsistent with the controlling principle that any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." (*Id.*, at pp. 651-652 [29 L.Ed.2d at pp. 243-244].)[5]

Our task in the case at bench, therefore, is to determine whether the challenged provision in section 7113.5 represents " 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (*Perez* v. *Campbell, supra,* 402 U.S. at p. 649 [29 L.Ed.2d at p. 242].) ■ The purposes embodied in the Bankruptcy Act, as explained in *Perez* (402 U.S. at p. 648 [29 L.Ed.2d at p. 242]) are to give debtors a "new opportunity" and a "clear field for future effort" by eliminating preexisting debts.

We turn to consider the purpose and effect of the challenged state provision. In *Tracy* v. *Contractors' State License Board, supra,* 63 Cal. 2d 598, 600, this court concluded that the provision is· "not designed to aid collection of debts but to protect the health, safety, and welfare of the public."[6] The purpose of the statute has also been declared to be "frankly

---

[5]In part "III" of the opinion, the *Perez* majority explained that the state statute there was invalid even under the *Kesler-Reitz* analysis. Since the express purpose of the state statute was to protect judgment creditors from " 'financially irresponsible persons' " (*Perez* at p. 644 [29 L.Ed.2d at p. 239]), the court reasoned that such a purpose conflicted with a primary objective of the Bankruptcy Act—"to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' [Citations.]" (*Perez* at p. 648 [29 L.Ed.2d at p. 241].) At the same time the court affirmed "that *Kesler* and *Reitz* are not in harmony with sound constitutional principle," and concluded that those cases "should not be extended to cover this new and distinguishable case" which has both the effect and purpose of frustrating the objectives of the Bankruptcy Act. (*Id.*, at p. 654 [29 L.Ed.2d at p. 245].)

[6]*Tracy* also quotes from *Howard* v. *State of California* (1948) 85 Cal.App.2d 361, 365 [193 P.2d 11] stating that "[t]he purpose of the act [Contractors License Law] is to guard the public against the consequences of incompetent workmanship, imposition and deception." It is clear, however, that *Howard* was merely expressing the *general* purpose of the Contractors License Law (§ 7000 et seq.) because the

economic," i.e., it reflects a "state concern for the economic ills of society." (*Hope* v. *Contractors' etc. Bd., supra,* 228 Cal.App.2d 414, 425.) It would not seem, at first blush, that a statute whose purpose is to protect the "health, safety, and welfare of the public," even though motivated by "frankly economic" reasons, would conflict with the purposes of the Bankruptcy Act. But we must probe further since we are commanded by *Perez* to consider not only the declared *purpose* of section 7113.5 but also its *effect.*

The effect of the section is unmistakably clear: a licensee is threatened with the loss of his license if his debts incurred as a contractor are discharged for less than their full amount in a bankruptcy proceeding. As a further consequence, the Contractors License Law forbids the reissuance of a revoked license until the amounts of the discharged debts are paid in full. (§ 7102.)[7] Hence, the statutory scheme in question frustrates the objectives of Congress in three respects: first, it tends to discourage a licensed contractor from having his business debts discharged in bankruptcy; second, if he is adjudicated a bankrupt, either voluntarily or involuntarily, section 7113.5 empowers the board to revoke or suspend his license, thus depriving him of his means of livelihood; and third, section 7102, in effect, compels the disciplined licensee to pay his discharged business debts if he desires to have his license reissued or reinstated.[8] In sum, the relevant sections of the Contractors License Law here under examination not only discourage licensed contractors from voluntarily availing themselves of the beneficent provisions of the Bankruptcy Act but sternly deny a fresh start to all licensees who are adjudicated bankrupts either voluntarily or involuntarily.

statute under consideration there was another section of the Contractors License Law making it a misdemeanor for an unlicensed person to act in the capacity of a contractor. (§ 7028.)

[7]Section 7102 provides in part: "After revocation of a license upon any of the grounds set forth in this article, the license shall not be reinstated or reissued within a period of one year after the final decision of revocation and then only on proper showing that all loss caused by the act or omission for which the license was revoked has been fully satisfied . . . ."

[8]Respondents contend that this proceeding in administrative mandamus challenges the revocation of Grimes' license under section 7113.5 and does not directly concern the application of section 7102. However, inasmuch as section 7102 governs Grimes' right to reissuance of his license, it represents one of the consequences of revocation under section 7113.5. Therefore, we must consider, as in *Perez* (402 U.S. at pp. 639-642 [29 L.Ed.2d at pp. 236-238]), the operative statutory scheme as a whole when it is claimed that a particular statute conflicts with the purposes of the Bankruptcy Act.

The state statutes here challenged bear a striking similarity to the state financial responsibility laws under attack in *Perez*. There a driver's license was required to be suspended for failure to pay a judgment debt discharged in a bankruptcy proceeding; here a contractor's license is subject to being revoked or suspended for failure to pay the full amount of a business debt discharged in bankruptcy. Furthermore it is noteworthy that under each state statute, the respective license may not be reinstated or reissued unless the discharged debt has been paid in full. ■ The conclusion is ineluctable that section 7113.5 is in conflict with the Bankruptcy Act and therefore must be declared invalid as violative of the supremacy clause.

Defendants, however, attempt to distinguish the statute in this case from the one in *Perez*. First, they argue that, unlike the state statute in *Perez*, section 7113.5 is not designed to promote the collection of debts discharged in bankruptcy. Apparently, defendants continue to look only to the *purpose* of the statute and not to its *effect*. As *Perez* pointed out, the crucial question is whether the state act frustrates the intent of Congress to give debtors a "new opportunity in life." (*Perez v. Campbell, supra*, 402 U.S. at p. 648 [29 L.Ed.2d at p. 241].) ■ Therefore, although a state statute is not expressly designed to promote the collection of debts, it may still offend the purpose of Congress if its effect is to deny to debtors the benefits of the Bankruptcy Act.

Additionally, defendants argue that unlike the state law in *Perez* which *required* the suspension of a license, section 7113.5 imposes less severe sanctions. (See *Tracy v. Contractors' State License Board, supra*, 63 Cal.2d at p. 601; *Hope v. Contractors' etc. Bd., supra*, 228 Cal.App.2d at p. 425.) They urge that under the section a discharge of debts in bankruptcy does not automatically result in loss of a contractor's license but merely gives cause for disciplinary action in an administrative proceeding wherein the contractor may be deemed worthy of retaining his license. The record in the instant case belies such a claim. The registrar, in his administrative hearing on the accusation, merely considered evidence that Grimes had been adjudicated a bankrupt and had discharged his debts incurred as a contractor for less than their full amount. The trial court found that his adjudication as a bankrupt was the sole cause for revocation of his license. In any event, defendants' argument is beside the point. ■ Whether disciplinary action is automatic or discretionary, the objectives of the Bankruptcy Act are frustrated where, as here, a state statute permits the registrar to revoke the license of a contractor who has been adjudicated a bankrupt.

Finally, defendants contend that our decision herein is controlled by our earlier opinion in *Tracy* v. *Contractors' State License Board, supra,* 63 Cal.2d 598. In *Tracy,* this court, relying on *Hope* v. *Contractors' etc. Bd., supra,* 228 Cal.App.2d 414 and noting that *Hope* rested on *Kesler* which in turn rested on *Reitz,* concluded that section 7113.5 was not in conflict with the Bankruptcy Act because it was not intended to promote the collection of debts. However, as we have explained, subsequent to *Tracy,* the high court in *Perez* overruled both *Kesler and Reitz,* and thus knocked out the decisional underpinnings from *Hope* and *Tracy.* Moreover, it is clear that *Tracy* is inconsistent with *Perez;* the former considered only the purpose of the state statute and did not, as required by the latter decision, examine its effect. *Tracy* v. *Contractors' State License Board, supra,* 63 Cal.2d 598, is therefore overruled.

We hold that the challenged provision in section 7113.5 conflicts with the Bankruptcy Act and therefore is invalid under the supremacy clause of the United States Constitution.

The judgment is affirmed.

Wright, C. J., Tobriner, J., and Mosk, J., concurred.

**BURKE, J.**—I dissent. The majority find that Business and Professions Code section 7113.5 conflicts with the objectives of the federal Bankruptcy Act (11 U.S.C. § 1 et seq.) and is therefore invalid under the supremacy clause (U.S. Const., art. VI, cl. 2). My colleagues feel compelled in reaching this result to overrule our unanimous decision in *Tracy* v. *Contractors' State License Board,* 63 Cal.2d 598 [47 Cal.Rptr. 561, 407 P.2d 865]. I cannot concur in this holding because I believe section 7113.5 is supported by a sound public policy and was correctly characterized by this court in *Tracy* (p. 600) as "not designed to aid collection of debts but to protect the health, safety, and welfare of the public."

In *Tracy,* we specifically rejected the claim that section 7113.5 conflicted with the Bankruptcy Act. We noted that " 'The purpose of the act [Contractors License Law] is to guard the public against the consequences of incompetent workmanship, imposition and deception.' [Citations.] Accordingly, the present statute . . . bears only tangentially on the purposes served by the Bankruptcy Act and does not conflict with it." (63 Cal.2d at p. 600; see also *Hope* v. *Contractors' etc. Bd.,* 228 Cal.App.2d

414 [39 Cal.Rptr. 514]; *Hopkins* v. *Contractors' State License Bd.*, 240 Cal.App.2d 710 [49 Cal.Rptr. 917].)[1]

I do not believe the majority's reliance on *Perez* v. *Campbell*, 402 U.S. 637 [29 L.Ed.2d 233, 91 S.Ct. 1704], is justified, for section 7113.5, which we upheld in *Tracy* v. *Contractors' State License Board, supra,* 63 Cal.2d 598, presents a different question than was decided by the high court in *Perez.* In *Perez* the court was faced with a statute which provided for the suspension of driving privileges following an accident unless the resulting judgment was paid in full, regardless of its prior discharge in bankruptcy. The court stated that: "The sole emphasis in the [Arizona] Act is one of providing leverage for the collection of damages . . . ." (402 U.S. at p. 646 [29 L.Ed.2d at p. 241].) This purpose was held to conflict with the federal Bankruptcy Act which was designed to give the debtor a fresh start.

On the other hand section 7113.5 is merely a codification of a proper state policy to protect the public from incompetence and deception by authorizing state officers to revoke or suspend a bankrupt contractor's license. The imposition of such discipline does not promote any debt-collection policy in conflict with the bankruptcy laws. (See fn. 1, *ante.*)

We noted in *Tracy* v. *Contractors' State License Board, supra,* 63 Cal.2d 598, 601, that the sanctions imposed by section 7113.5 " 'are much less drastic than those of the Utah Financial Responsibility Act. Here acts of bankruptcy do not require peremptory license revocation. They merely give cause for the taking of some disciplinary action. Whether such action will be taken and, if so, the extent thereof, is left to be gauged by a comprehensive appraisal of all factors relevant to the ultimate issue: Can this person at the present time be deemed competent to continue to pursue a vocation substantially affecting the public weal?' " (Quoting from *Hope* v. *Contractors' etc. Bd., supra,* 228 Cal.App.2d 414, 425.)

The majority suggest that section 7113.5 is invalid because "it tends to discourage a licensed contractor from having his business debts dis-

---

[1]As appellants point out, the state has a legitimate interest in protecting subcontractors, materialmen, employees and property owners from loss resulting from the financial irresponsibility or incompetence of building contractors. Accordingly, the fact of bankruptcy properly triggers an investigation leading to possible license revocation, as does any failure to pay suppliers, materialmen or subcontractors (§ 7120) or failure to complete a construction job (§ 7113). Under such circumstances, revocation occurs to prevent similar loss in the future, and not to provide *past* creditors with any additional leverage or recourse against the contractor.

charged in bankruptcy . . . ." (*Ante*, p. 312.) Evidently, the majority assume that any law which discourages a debtor from taking the extreme measure of bankruptcy would be invalid! To the contrary, in view of the likely hardship to creditors and the public, and the damage to his own reputation, the debtor quite properly should be inhibited in this regard. Of course, once the debtor does elect to file for bankruptcy, the state may not interfere with the policy underlying the bankruptcy laws to effect a permanent discharge of business debts. Yet, section 7113.5, in authorizing the board to take disciplinary action against a bankrupt contractor, has no effect whatever upon the discharge or collection of the contractor's debts.

Thus, I would conclude that statutory authority to revoke a bankrupt contractor's license for the protection of the public does not conflict with the purposes of the federal Bankruptcy Act to relieve a debtor from payment of his past obligations.

Wholly apart from the propriety of license revocation, however, is the question whether a contractor such as Grimes must pay his previously discharged debts as a condition to reinstatement of his contractor's license. Section 7102 of the Business and Professions Code sets forth the conditions for obtaining reinstatement or reissuance of a license previously revoked by the board, including the provision that such reinstatement or reissuance shall not occur for a period of one year following revocation, "and then only on proper showing that *all loss caused by the act or omission for which the license was revoked has been fully satisfied* and that all conditions imposed by the decision of revocation have been complied with." (Italics added.) Grimes forcefully contends that section 7102 would conflict with the bankruptcy laws (and the rationale of the *Perez* decision) were it interpreted as requiring Grimes to repay his discharged debts as a condition to reinstatement of his license. (See also Note, 15 Hastings L.J. 348.)

Yet the validity and interpretation of section 7102 is not yet before us in this case, for Grimes only attacks the initial revocation of his license and not the board's failure to reinstate it. (See *Hope* v. *Contractors' etc. Bd.*, *supra*, 228 Cal.App.2d 414, 426.) If, contrary to the board's representations to this court,[2] the board attempts to impose such a condition

---

[2] Appellants have disclaimed any intention to apply the provisions of section 7102 to cases wherein a license has been revoked under section 7113.5. Appellants further state that "The Registrar [of Contractors], in protecting the public, is concerned with whether or not the licensee has rehabilitated himself and is likely to practice his

then the question of the validity of section 7102, as so applied, will be ripe for our consideration.

I would reverse the judgment.

McComb, J., and Clark, J., concurred.

Appellants' petition for a rehearing was denied September 19, 1974. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.

chosen profession competently and responsibly so as not to represent a threat to the laborers, materialmen, and homeowners with whom he will come into contact as a contractor."