[Civ. No. 22954. Fourth Dist., Div. One. Aug. 14, 1981.]

GAIL BROWN, Plaintiff and Respondent, v.
SURETY COMPANY OF THE PACIFIC, Defendant and Appellant.

COUNSEL

Jeffrey M. Hausman for Defendant and Appellant.

Comstock & Joye and Martin Krawiec for Plaintiff and Respondent.

OPINION

STANIFORTH, J.—Gail Brown's (Brown) complaint against Eugene D. Edwards (Edwards) and Surety Company of the Pacific (SCP) contained three causes of action. The first cause of action alleged fraud by Edwards, the second cause of action alleged Edwards defaulted on two promissory notes made payable to Brown, and the third cause of action alleged SCP was liable, as surety, on a statutory contractor's bond issued on behalf of Edwards. Several months after SCP answered the complaint, Brown and SCP each filed motions for summary judgment.[1] The trial court granted Brown's motion, but denied SCP's cross-motion for summary judgment. SCP appeals.

---

[1]Brown was granted a default judgment against Edwards on November 6, 1979.

### FACTS

The following facts—set forth in Brown's declaration in support of her motion for summary judgment—are not controverted. In March 1979, Edwards told Brown he was a general contractor in need of money for labor and materials to enable him to finish a construction project in Laguna Beach. Edwards represented to Brown he would repay her from construction loan funds received after completing the project. Edwards took Brown to the construction site and, while there, showed her his contractor's license and a sign on the premises which said "Edwards Construction Company." In reliance upon Edwards' statements, Brown loaned Edwards $6,000 evidenced by two promissory notes. One note was payable in 10 days and the other in 21 days.

When Edwards failed to repay the notes, Brown attempted to locate him at the construction site. However, Brown was told by Tom St. Peter and Bob Gustavson, workmen at the site, that Edwards "had no interest in the project, had contributed no monies; and had no right to any draws or construction loan funds." These statements were confirmed by John Loomis, the architect on the project.

Brown confronted Edwards with these statements. Edwards admitted their truth and told Brown he had used the money for personal expenses rather than for labor and materials. Edwards repaid $2,000 of the $6,000 owed after this suit was filed.

### DISCUSSION

### I

At all times relevant,[2] section 437c of the Code of Civil Procedure provided in pertinent part that a summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the

---

[2]Section 437c has subsequently been amended. (Stats. 1980, ch. 57, § 1, p. 151.) The amendments to section 437c, however, do "not apply to any appeal [where] the notice of appeal [was] filed prior to January 1, 1981." (*Id.*, § 2, p. 153.) The notice of appeal in the present case was filed August 18, 1980.

*admissible evidence* set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Italics added.) (1) SCP contends Brown's declaration is insufficient to support the trial court's granting of Brown's motion for summary judgment because the declaration is based, in part, on inadmissible hearsay.

The statements by Tom St. Peter, Bob Gustavson and John Loomis are, standing alone, inadmissible hearsay. However, Brown declared Edwards admitted the truth of these statements when confronted with them. Thus, the statements of St. Peter, Gustavson and Loomis would be admissible as adoptive admissions in the action against Edwards. Evidence Code section 1221 authorizes this conclusion: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth."

And as was said in *Cory* v. *Golden State Bank* (1979) 95 Cal.App.3d 360, 366 [157 Cal.Rptr. 538], "[a] nonmoving party's admissions may be used to establish that no material factual issues remain to be resolved by trial."

Edwards had defaulted and a judgment was taken against him; this fact, however, does not alter SCP's liability to Brown. SCP's obligation is a result of Edwards' actions and arises solely because SCP is surety on the contractor's bond which was required by statute (Bus. & Prof. Code, § 7071.6) as a prerequisite to issuance of Edwards' contractor's license.

Evidence Code section 1224 provides: "When the liability, obligation, or duty of a party to a civil action is based in whole or in part upon the liability, obligation, or duty of the declarant, ... *evidence of a statement made by the declarant is as admissible against the party as it would be if offered against the declarant in an action involving that liability, obligation, duty, or breach of duty.*" (Italics added.) Section 1224 "contemplates situations in which 'the obligation or duty' of a third person is 'an essential operative fact in establishing the cause of action or defense involved'; e.g., where ... the party has assumed responsibility for obligations of the declarant (guarantor, *surety* ...)."

(Witkin, Cal. Evidence (2d ed. 1977 pocket supp.) § 522, pp. 233-234; italics added.)

We conclude the statements of St. Peter, Gustavson and Loomis, coupled with Edwards' admissions of their truthfulness, would be admissible in the action not only against Edwards but also against the surety SCP; they were properly considered by the trial court in support of Brown's motion for summary judgment.

## II

SCP objects to Brown's declaration in further respects. It is urged that the declaration is not based on matters to which Brown could testify; it is replete with conclusionary rather than factual matters. We need not delve further into the soundness of these charges in view of the reversal required for the reasons set forth in III *infra*.

## III

■ Sanctifying otherwise inadmissible hearsay as adoptive admissions does not determine this appeal, for the critical issue posed is whether a contractor's license bond covers any and all misdeeds of a person who also happens to be licensed as a contractor.

Specifically, does the SCP bond cover the delict claimed here—a fraudulent inducement to advance money, creating a debt evidenced by two promissory notes not repaid in full when due? Edwards was without doubt a licensed general contractor; SCP had issued the bond as required by Business and Professions Code section 7071.5 as a condition of Edwards' obtaining his license. However, Brown's pleadings make it crystal clear "he [Edwards] was not the general contractor" on the job or building that he (Edwards) represented was in need of money in order to complete.

The bond in question was posted by SCP in conformity with section 7071.6 of the Business and Professions Code requiring that as a precondition to licensing in the State of California, a contractor either post a cash deposit or a license bond.

The SCP bond is of a disciplinary and penal nature and a payment by SCP from the license bond subjects the contractor to disciplinary action pursuant to section 7071.11 of the Business and Professions Code.

However, SCP as surety on a contractor's license bond is responsible only for obligations that arise out of the statute. In *FAJ, Inc. v. Surety Co. of the Pacific* (1977) 68 Cal.App.3d Supp. 20 [137 Cal.Rptr. 633], the Appellate Department for the Superior Court of San Francisco held: "The obligation of the surety arises out of the statute and as such is limited in its exposure to conditions set forth by statute. Thus, no greater burden may be imposed upon the surety than that specifically set forth by statute." (*Id.*, at p. 22.) And in *Davis Co. v. Superior Court* (1969) 1 Cal.App.3d 156, 158 [81 Cal.Rptr. 453], the Court of Appeal said: "The court will not impose penalties for noncompliance not provided for by the statute."

Brown's complaint alleges two specific statutory grounds for recovery from the surety: "Under the provisions of Business and Professions Code 7071.5, such bond is for the benefit of plaintiff who was damaged by the licensee EDWARDS as a result of the violation of Chapter 9 of the Business and Professions Code in that defendant EDWARDS *diverted funds from the project as set forth in Section 7108 and perpetrated a wilful and fraudulent act upon defendant as set forth in Section 7116.*" (Italics added.)

If we scrutinize the sections relied upon to determine if a liability is created—as required under the statutes—we find: first, Business and Professions Code section 7071.5 states in pertinent part: ". . . . Such contractor's bond or cash deposit shall be for the benefit of the following:

". . . . . . . . . . . . . . . . .

"(b) Any person damaged as a result of a willful and deliberate violation of this chapter by the licensee, or by the fraud of the licensee in the execution or performance of a construction contract." and section 7108 provides: "Diversion of funds or property received for prosecution or completion of a *specific construction project or operation*, or for a specified purpose in the prosecution or completion *of any construction project or operation*, or failure substantially to account for the application or use of such funds or property on the *construction project* or operation for which such funds or property were received constitutes a cause for disciplinary action." (Italics added.) Section 7116 provides: "The doing of any wilful or fraudulent act by the licensee as a *contractor* in consequence of which another is substantially injured constitutes a cause for disciplinary action." (Italics added.)

An examination of the plain unambiguous language of these sections reveals the flaw in Brown's position. First, *Edwards was not* the "contractor" on the job for which the money was loaned. "Contractor" is defined in Business and Professions Code section 7026 as: "The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith .... The term contractor includes subcontractor and specialty contractor."

Second, Edwards was not a person "who undertakes to or offers to undertake to ... construct ... any building ...." (§ 7026.) He had no contract whatsoever, according to Brown's uncontradicted declaration, to construct any building or any particular project. In *Hollywood etc. Co.* v. *John Baskin, Inc.* (1953) 121 Cal.App.2d 415, 430 [263 P.2d 665], the court emphasized the statutory essence of section 7108 in saying: "[Section] 7108 ... state[s] the grounds for disciplinary action *against a contractor or subcontractor who diverts funds or property received for the prosecution or completion of a specific construction project ...." (Ibid.;* italics added.)

Section 7116 speaks explicitly to the point that it is the "wilful or fraudulent act ... *as a contractor*" that gives rise to liability.

Brown has offered not a single case authority in support of her position. This singular lack of authority becomes of greater significance in contrast to the fact that *all cases* cited in West Annotated Code following Business and Professions Code section 7108 involving diversion of funds *apply this* section where the contractor on a specific job has diverted funds from that job.

Similarly *all* cases cited in West Annotated Code following Business and Professions Code section 7116 involve fraudulent acts done "as a contractor," that is to say, as a person so defined in Business and Professions Code section 7026.

The conclusion that the licensee must be acting in the capacity of a contractor before the license bond can be subjected to liability is further buttressed by these reasons. The risk insured and the corresponding premium received are directly related to the breadth of liability imposed on the contractor by the statutes. If insurance coverage is limited to the improper diversion of funds received for the prosecution of a specific construction project (as § 7108 provides), then there is one degree or level or quantum of exposure to liability by the surety. The funds received on a specific job are by their nature limited to a precise sum; the monies are given for a specific purpose and may remain under the control of the third party—lender—who advances the money. Where such an advance is made for a specific job, then a whole host of protections are inherent, built in to limit the risk of the surety. Either the surety—or certainly the lender who advances the money for the contractor's project—can and usually does insist upon some manner of fund control to insure that the funds so advanced are spent for the construction of the project—joint control of bank accounts; fund control by building supply houses; insistance upon lien releases, etc. before money is released are but a few of the built-in protections, limiting the risk to the surety under the section 7108 species of exposure. If Brown's view is accepted, the exposure becomes limited only by the imagination of a con man who also happens to have a California contractor's license.

The same reasoning applies to the exposure of the surety based upon section 7116. The liability imposed is not that for fraudulent acts of a licensee but rather *"fraudulent act by the licensee as a contractor."* (§ 7116; see *Barry* v. *Contractors State License Board.* (1948) 85 Cal. App.2d 600, 606 [193 P.21d 979].)

If the authorization of section 7116 were not so limited, the SCP policy would be required to cover any and all wilful or fraudulent acts of a licensee. Such coverage—if not contrary to public policy—bears no relationship to the general purposes of chapter 9 as found by the California Supreme Court in *Grimes* v. *Hoschler* (1974) 12 Cal.3d 305, 311, footnote 6 [115 Cal.Rptr. 625, 525 P.2d 65].

In sum, Brown is attempting to metamorphose a claimed fraudulent inducement to lend money (and the failure to repay it) into an act which is a *violation of two specific sections of the contractors license law.* The statutory language does not admit of such feat. Brown's papers prove Edwards engaged in acts of a con man, not a contractor as defined by Business and Professions Code section 7026.

Judgment reversed.

Brown (Gerald), P. J., concurred.

**WIENER, J.**—I respectfully dissent.

The Contractors License Law (Bus. & Prof. Code, § 7000 et seq.)[1] is consumer oriented legislation enacted to protect the public from incompetent and dishonest contractors. (See, e.g., *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 150 [308 P.2d 713]; *Walker* v. *Thornsberry* (1979) 97 Cal.App.3d 842, 848 [158 Cal.Rptr. 862] (dis. opn. of Reynoso, J.).) Relying on the absence of precedent, the majority narrowly construe the legislation to deny recovery to a person bilked by a building contractor who used his license to borrow funds for a specific construction project. In my view, Brown is entitled to recover against the surety because the actions of Edwards, as a licensed contractor holding himself out as the building contractor of a specific project within the meaning of section 7026, fall within the conduct proscribed by section 7108, i.e., he diverted funds received for the completion of a specific construction project.

The majority reject a common sense interpretation of ·the statute by adding the condition that a contractor must be the contractor *on the job* before recovery against the bond will be permitted. Neither the legislative history nor the words of the statute require this interpretation. It is indeed a puzzling anomaly when a member of the public will receive the benefit of the contractor's license bond only after the contractor has a job, but not before, even though the nature of the fraud may be identical. Presumably, the majority feel that in order to effectuate the purpose of the legislation, it is necessary to terminate the liability of the surety when the contractor's sting is so successful that he is able to convince an innocent lender not only that he is the contractor on a certain project, but also into advancing funds for that project. I have difficulty understanding why the surety should be the beneficiary of the greater fraud and the defrauded individual, for whom the statute was written, the beneficiary of only the lesser fraud. I would hope if the scam were to reach criminal proportions and the contractor's license revoked or suspended (see §§ 475 and 490), the majority would have a different opinion. Because the evidence establishes Edwards was acting as a li-

---

[1]All statutory references are to the Business and Professions Code unless otherwise specified.

censed contractor and Brown reasonably relied upon his status within the meaning of the statute, I would affirm the judgment.