In re Reginald **RICHARDSON**, Debtor.

Civ. A. No. 82–1267.
Bankruptcy No. 79–371.

United States District Court,
E.D. Pennsylvania.

Dec. 7, 1982.

Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

John D. Killian, Killian & Gephart, Harrisburg, Pa., for appellee.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

The appellants, Pennsylvania Higher Education Assistance Agency (PHEAA) and two of its officials, Kenneth R. Reeher, and Jay Evans, herein appeal an order of the Bankruptcy Court which determined that PHEAA Regulation 121.4(b),[1] 22 Pa.Code

---

**1.** Currently, PHEAA Regulation 121.4(b) provides:

> Eligibility for a loan guaranty will be denied to any person who has allowed a loan to mature through purchase from the lender by the Agency under the guaranty of a previous loan in the Loan Guaranty Program, or has a current loan default record with the Agency as a result of a claim on the loan having been submitted to the Agency by the lender unless the applicant has repaid the loan in whole or in part, and in the judgment of the Agency, did not make such repayment merely to gain loan eligibility or unless the applicant other-

wise shows good cause why loan eligibility should be reinstated. . . .

22 Pa.Code § 121.4(b). This regulation was effective June 20, 1981 and is substantially similar to the version of the same regulation considered by the Bankruptcy Court:

> Eligibility for a loan guaranty shall be denied to any person who has allowed his loan to mature through purchase from the lender by the Agency under the guaranty of a previous loan in the Loan Guaranty Program, unless in the judgment of Agency staff such loan should be guaranteed and one of the following has occurred:

§ 121.4(b) is unconstitutional pursuant to § 525 of the Bankruptcy Code as applied to the appellee. The Bankruptcy Court's order also enjoined appellants from applying PHEAA Regulation 121.4(b) to deny the application of Reginald Richardson for a guaranteed student loan, and the order directed PHEAA to approve the application of Richardson for a guaranteed student loan.[2]

The facts, as found by the Bankruptcy Court are as follows: Reginald Richardson attended undergraduate school at the University of Pennsylvania between 1972 and 1976. During that time the plaintiff applied for and received student loans guaranteed by PHEAA totaling $5,800.00. After leaving school prior to graduation, Richardson failed to contact the lending institution and establish a repayment schedule or to repay any of his student loans as required by his loan agreements. As a result, PHEAA was obliged to purchase Richardson's loans from the lending institution.

Thereafter, on March 12, 1979, Richardson filed a voluntary petition in bankruptcy under the Bankruptcy Act. On June 29, 1979, Richardson obtained a discharge from all of his dischargeable debts including the debt owed to PHEAA for his student loans.[3]

In the spring of 1980, Richardson returned to the University of Pennsylvania to complete his undergraduate degree. At that time he applied for a PHEAA-guaranteed grant which application was denied by PHEAA because of the fact that Richardson had defaulted on his prior PHEAA-guaranteed student loans. At the same time, he applied for a PHEAA-guaranteed loan which application was not processed by the University of Pennsylvania. Because Richardson was able to obtain other loans and grants through the school, he failed to appeal PHEAA's denial of his grant application or to take any other steps to obtain relief from that decision.

In May of 1981, Richardson graduated from the University of Pennsylvania. He had applied to several law schools and had decided in May to attend Temple Law School. On June 21, 1981, Richardson filed an application for a PHEAA-guaranteed student loan through Girard Bank. That application was initially denied by Girard Bank but, after discussions with Richardson's lawyer, the Bank approved the application and sent it on to PHEAA for approval.

On June 22, 1981, Richardson filed a complaint in Bankruptcy Court seeking declaratory and injunctive relief against PHEAA to prevent it from denying his guaranteed loan application. On August 10, 1981, PHEAA filed a motion to dismiss that complaint. Thereafter the appellee was admitted to the University of Virginia Law School and filed a new guaranteed loan application which was processed through the Bank. A hearing was held on the complaint and motion to dismiss on August 20, 1981, at which time the plaintiff also filed a motion for a temporary restraining order/or for a preliminary injunction to require PHEAA to process his loan application immediately and to enjoin PHEAA from denying that application for discriminatory reasons. Following an evidentiary hearing, the Bankruptcy Court granted the relief sought by issuance of an order dated October 9, 1981.[4]

Appellants raise three contentions on appeal. First, appellants argue that the broad jurisdictional authority conferred on bankruptcy judges under 28 U.S.C. § 1471 is

---

(1) The defaulted loan has been repaid in full.
(2) An approved lending institution has purchased the outstanding balance of the defaulted loan.
(3) The student has taken positive steps toward repayment of the loan or toward supplying reasons in justification of the failure to repay. . . .

**2.** The Bankruptcy Court's decision is reported at 15 B.R. 925 (Bkrtcy.E.D.Pa.1981).

**3.** Section 523(a)(8) of the current Bankruptcy Code now provides that guaranteed student loans are not dischargeable.

**4.** PHEAA then sought a stay of the order pending appeal, which was denied. 15 B.R. 931 (Bkrtcy.E.D.Pa.1981).

unconstitutional. Second, it is contended that the Bankruptcy Court erred in its determination that guaranteed student loans fall within the terms of 11 U.S.C. § 525, which prohibits governmental entities from discriminating against bankrupts with respect to the grant of various public benefits. Thirdly, appellants argue that PHEAA Regulation 121.4(b) would not discriminate against appellee on the basis of his prior bankruptcy.

■ The Bankruptcy Code of 1978 expanded the jurisdiction of the Bankruptcy Courts to include "all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." 28 U.S.C. § 1471.[5] Appellants argue that the grant of such broad jurisdictional power to the Bankruptcy Courts is unconstitutional, thus warranting dismissal of Richardson's adversary proceeding in Bankruptcy Court that resulted in the decision that is now the subject of appeal. During the pendency of this appeal, the United States Supreme Court has indeed concluded that Congress' grant of jurisdiction to the Bankruptcy Courts created by the Bankruptcy Reform Act of 1978 was unconstitutional because it conferred Article III judicial power upon judges who lacked life tenure and protection against salary diminution as are afforded Article III judges under the Constitution. *Northern Pipeline Construction Company v. Marathon Pipe Line Company,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Supreme Court, however, held that its decision would apply only prospectively, and the Court stayed its judgment until October 4, 1982. 102 S.Ct. at 2880. Since the Court has expressly declined to give retroactive effect to its holding, we do not find appellants' jurisdictional argument to be a ground for upsetting the Bankruptcy Court's decision.

Title 11, U.S.C. § 525 provides:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or oth-

er similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, *solely* because such bankrupt or debtor is or has been a debtor under this title or a bankrupt debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or· that was discharged under the Bankruptcy Act.

*Id.* (emphasis supplied). In enacting Section 525, Congress intended to codify the result of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). H.Rep. No. 95–595, 95th Cong., 1st Sess., 366–67 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 81 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. In *Perez,* the Supreme Court found that Arizona's policy of denying a driver's license to bankrupts with discharged tort judgments was in conflict with Congress' intent to provide bankrupts with a fresh start unhampered by preexisting debt. 402 U.S. at 643, 91 S.Ct. at 1708. Subsequently, many cases followed and expanded upon *Perez.* For instance, in *Grimes v. Hoschler,* 12 Cal.3d 305, 115 Cal. Rptr. 625, 525 P.2d 65 (1974), the Supreme Court of California held that the revocation of a building contractor's license by a state licensing board was invalid in light of *Perez.* In *Handsome v. Rutgers University,* 445 F.Supp. 1362 (D.N.J.1978), the Court invalidated the State University's practice of withholding student transcripts based on *Perez. See also, Matter of Heath,* 3 B.R. 351, 1 C.B.C.2d 736 (Bkrtcy.N.D.Ill.1980) (section 525 was violated when a state uni-

---

**5.** 28 U.S.C. § 1471 does not become effective until April 1, 1984. However, this provision was made applicable during the current transi- tion period by Section 405 of Title IV of the Bankruptcy Reform Act of 1978.

versity refused to furnish a Chapter 13 debtor his transcript until the debtor's prepetition loan was paid in full). In *Henry v. Heyison,* 4 B.R. 437 (E.D.Pa.1980), the District Court held that the Pennsylvania Financial Responsibility Law conflicted with Section 525 in its imposition of special eligibility requirements to operate a vehicle for persons with unsatisfied motor vehicle tort judgments discharged in bankruptcy.

In the case at hand, appellee instituted the adversary proceeding below during the pendency of his PHEAA loan application by the agency. The Bankruptcy Court nonetheless concluded that the matter was ripe by reason of the clear language of the then applicable PHEAA regulation:

> (b) Eligibility for a loan guaranty shall be denied to any person who has allowed his loan to mature through purchase from the lender by the Agency under the guaranty of a previous loan in the Loan Guaranty Program, unless in the judgment of Agency staff such loan should be guaranteed and one of the following has occurred: .
>
> (1) The defaulted loan has been repaid in full.
>
> (2) An approved lending institution has purchased the outstanding balance of the defaulted loan.
>
> (3) The student has taken positive steps toward repayment of the loan or toward supplying reasons in justification of the failure to repay . . . .

22 Pa.Code § 121.4(b) (1981) (superceded June 21, 1981).[6] Finding Section 525 applicable to the case at hand, the Bankruptcy Court concluded:

> In the instant case it is clear that PHEAA's regulations treat a person who has had his student loan obligation discharged in bankruptcy different from a person who has never incurred a student loan debt. PHEAA admits that a person who has never had a student loan guarantee before is automatically approved for a student loan guarantee as long as he is a resident of Pennsylvania. Therefore,

PHEAA's regulation 22 Pa.Code § 121.-4(b) which provides that the plaintiff's application must be denied initially is an unlawful discrimination under § 525 of the Bankruptcy Code.[7]

Thus, the Bankruptcy Court granted appellee immediate injunctive relief.

Among those cases applying the principles of *Perez, supra,* and its codification in Section 525, the most similar to the case at hand are those decisions addressing the withholding of transcripts to a debtor whose student loans have been discharged in bankruptcy. *Handsome v. Rutgers University, supra; In Re Heath, supra; Lee v. Board of Higher Education,* 1 B.R. 781 (S.D. N.Y.1979). While these decisions have uniformly held that a state university may not withhold transcripts under such circumstances, the Court in *Handsome v. Rutgers University, supra,* was careful to note, "This is not to say that defendant [Rutgers University] may not in the future validly decline to extend credit to one who has previously discharged his debts in bankruptcy . . . ." 445 F.Supp. at 1362. Similarly, it has been noted that "[t]he prohibition against discriminatory treatment does not affect decisions to grant credit to the debtor because of the fact that future financial responsibility may be taken into account by a creditor." 3 Collier On Bankruptcy § 525.02 at 525–3, 4 (15th ed. 1982). *See,* S.Rep. No. 95–989, 9th Cong., 2nd Sess. 81 (1978); H.Rep. No. 95–595, 2nd Sess. 367 (1977).

▇ Unquestionably, Section 525 of the Bankruptcy Code can not be interpreted so as to preclude PHEAA from making reasonable inquiry into the future financial responsibility of a loan applicant such as appellee, prior to the extension of additional credit in the form of a guaranteed student loan. This is particularly so where, as here, there exists legitimate basis for denial of the application quite apart from the appellee's bankruptcy, or the simple fact of his failure to pay a debt dischargeable in bank-

---

**6.** *See* note 1 *supra.*

**7.** 15 B.R. at 929.

ruptcy. Following appellee's leaving college in 1976, he not only failed to make any payments on his PHEAA loan, but he failed to contact the lender relative to a repayment schedule. Under applicable PHEAA regulations, had appellee given notice to the lending institution, he could have been afforded an additional twelve months or more grace period prior to making any payments, on grounds of hardship. Thus, the maturation of appellee's loan through purchase by the agency could have been avoided without the need to start making payments on the loan. *See,* 22 Pa.Code § 121.67(f).[8]

Under these circumstances, it is appropriate to conclude that PHEAA had reason independent of appellee's bankruptcy or the discharge of a previous loan, to warrant investigation of the appellee's future financial responsibility. In any event, the Bankruptcy Court's decision having been rendered prior to a loan eligibility determination by PHEAA, the agency was precluded from any inquiry into the future financial responsibility of appellee. In sum, we view PHEAA Regulation 121.4(b) as was considered by the Bankruptcy Court, to be capable of application without violating 11 U.S.C. § 525 and therefore, we do not deem it appropriate to invalidate the Commonwealth agency's regulation or practice. Accordingly, that portion of the Bankruptcy Court's order finding 22 Pa.Code § 121.4(b) unconstitutional as applied to appellee will be vacated. The record, however, suggests that appellee's loan application pending at the time of the Bankruptcy Court's order was forthwith approved and the proceeds have no doubt been expended on appellee's education.[9]

The Court's decision does not now affect the disposition of appellee's loan that was approved by PHEAA pursuant to the Bankruptcy Court's order nor are any subsequent loans to appellee, approved by PHEAA affected. Nonetheless, that aspect of the injunction respecting future application of 22 Pa.Code § 121.4(b) should be lifted.

---

8. "A borrower may defer repayment of his loans for a period not to exceed 12 months during which the borrower is seeking and unable to find full-time employment, upon proper notice to the lender holding the lien." 22 Pa. Code § 121.67(f). Moreover, such a borrower is entitled "to an additional six-month post deferment grace period before resuming payment on loans disbursed by the lender before October 1, 1981." 22 Pa.Code § 121.67(h). Moreover, these deferment provisions could *follow* the nine month period after leaving school, which is when repayments become due. 22 Pa.Code § 121.67(a). Besides not utilizing any of the non-payment procedures to avoid default, evidence was presented that appellee did not get in touch with PHEAA officials, although PHEAA officials had placed several telephone calls to his family's residence. Hearing Transcript at 73–75.

9. *See, In Re Richardson,* 15 B.R. 930 (Bkrtcy.E. D.Pa.1981) (denying PHEAA's motion for a stay pending appeal in the instant case).